**Doyle HARTMAN, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.**

No. 3:97–CV–0438–P.

United States District Court, N.D. Texas, Dallas Division.

Sept. 8, 1998.

George Parker Young, Michael Thomas Cooke, Friedman Young Suder & Cooke, Fort Worth, TX, for Plaintiff.

R. Brent Cooper, William Frederick Allred, Cooper & Scully, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

This matter is before the court on the parties' cross motions for summary judgment on the Plaintiff's allegation that Defendant failed timely to pay a claim in violation of Article 21.55 of the Texas Insurance Code. Having considered the arguments and authority presented, and the record before it, the Court **GRANTS** Defendant's and **DENIES** Plaintiff's motions.

### BACKGROUND

#### The Wilcox Suit and St. Paul I

In 1990, Doyle Hartman sued an ex-employee for breach of the severance agreement between them ("Wilcox Suit"). Wilcox counterclaimed, alleging various torts. On March 24, 1992, Hartman notified St. Paul of the Wilcox suit and requested a defense under certain general and excess liability policies issued to him by St. Paul. Prior to trial of the Wilcox Suit, Hartman brought an action in this court to enforce his contract with St. Paul ("St. Paul I Suit").[1] The Wilcox Suit was tried before a jury in January of 1994 and resulted in a partial verdict. Thereafter, the judge ordered the entire case be retried and set the matter for November 14, 1994. In the meantime, the St. Paul I suit

progressed. Prior to trial, the court ruled as a matter of law that St. Paul owed Hartman a duty to provide coverage under two policies for four of Wilcox's counterclaims, subject to a jury finding that Hartman provided prompt written notice of those claims.

After trial, the jury found as follows:

1) St. Paul was not negligent in failing to settle Wilcox's claims against Hartman;

2) Hartman was negligent in failing to settle Wilcox's claims against him and such negligence proximately caused injury or damage;

3) Reasonable and necessary attorneys' fees and expenses for the period of March 1993 through February 1994 was $333,000;

4) Hartman failed to give St. Paul prompt written notice and St. Paul was prejudiced thereby;

5) St. Paul complied with its duty of good faith and fair dealing to Hartman;

6) St. Paul engaged in no unfair or deceptive insurance act or practice; and

7) There was no reasonable basis to believe St. Paul engaged in willful, wanton or malicious conduct toward Hartman.

Based on the foregoing, the court entered a take nothing judgment against Hartman. On appeal, the Fifth Circuit affirmed in part and reversed in part, holding that St. Paul had a duty to defend Wilcox's Second through Fifth Counterclaims, but not his First. The Fifth Circuit determined that Hartman had promptly notified St. Paul in 1992 of the Wilcox's First Counterclaim and that "the trial court erred in deciding that Hartman forfeited coverage under his 1992 CGL policy for Wilcox's Second, Third, Fourth and Fifth Supplemental Counterclaims because he did not give prompt notice of the February 6th letter or the filing of Wilcox's suit in December 1990." Based on the jury's finding that

---

1. Specifically, Hartman alleged breach of contractual duty to defend and indemnify, breach of St. Paul's duty of good faith and fair dealing, and violation of Texas Insurance Code Article 21.21. St. Paul counterclaimed for declaratory judgment regarding its duty to defend and indemnify.

reasonable attorneys' fees incurred by Hartman to defend the second through fifth counterclaims for the period March 1993 to February 1994 were $333,000, the court ruled that "Hartman is entitled to judgment for at least that sum." The court then remanded the action "for further proceedings consistent herewith."

On rehearing, the Fifth Circuit stated: "On remand, the district court is instructed to enter judgment for Hartman in the sum of $333,000 and the court may consider the parties' arguments concerning whether Hartman is entitled to additional attorneys' fees for prosecuting this action." Finally, the court entered an order on recall of mandate stating: "The district court should on remand award prejudgment and post-judgment interest based on applicable law when it enters judgment."

On March 13, 1997, this Court entered an order allowing Plaintiff to withdraw the $364,000 which Defendant had deposited into the registry of the court [representing the $333,000 found by the jury plus interest]. This withdrawal was without waiver of or prejudice to Plaintiff's rights to seek additional amounts he may be entitled to receive and/or recover in this action or in other litigation existing between Plaintiff and Defendant. Finally, the Court ordered that the amount withdrawn will be credited to the amount the Court determines Defendant owes in the Final Judgment eventually entered in this case. On April 1, 1998, this Court determined that Hartman was not entitled to recover attorney fees incurred in prosecuting the St. Paul I suit, an entered an order accordingly. On September 4, 1998, final judgment was entered in St. Paul I.

### St. Paul II

Hartman filed the instant suit ("St. Paul II") alleging breach of contract; breach of the duty of good faith and fair dealing; and violation of Texas Insurance Code Articles 21.21 and 21.55, seeking as actual damages recovery of attorneys' fees and expenses incurred in the Wilcox litigation post-February 1994 and the "value" of the settlement Hartman reached with Wilcox in August of 1994, along with statutory penalties for St. Paul's alleged failure timely to pay Hartman the $333,000 directed by the Fifth Circuit's mandate, attorneys' fees for prosecuting St. Paul II and punitive damages for St. Paul's alleged gross negligence. The Court has entered summary judgment in St. Paul's favor on Hartman's breach of contract, good faith and fair dealing and article 21.21 causes of action.

Left remaining is Hartman's allegation that St. Paul violated article 21.55 by failing to pay Hartman within 60 days of entry of the mandate the amount identified by the Fifth Circuit. Hartman seeks entry of judgment that St. Paul violated article 21.55 as a matter of law, leaving for trial determination of the amount of statutory damages owed. St. Paul contends that article 21.55 is inapplicable to the facts alleged and seeks entry of a take nothing judgment in its favor.

### ANALYSIS

#### Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thomas v. Harris County*, 784 F.2d 648, 651 (5th Cir.1986). The parties do not dispute the procedural facts presented; instead, they contest the legal effect of those facts on the current action.

#### Article 21.55 of the Texas Insurance Code

Article 21.55 sets out the steps an insurer must follow when presented with a claim by an insured. *See generally* Tex. Ins.Code Ann. art. 21.55 (Vernon Supp.

1998). Failure to comply with the statute results in a penalty:

> In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.

TEX.INS.CODE ANN. art. 21.55 § 6.

The statute defines a claim as "a first party claim made by an insured or a policyholder under an insurance policy ... that must be paid by the insurer directly to the insured or beneficiary." TEX.INS. CODE ANN. art. 21.55 § 1(3) (Vernon Supp. 1998). ERIC MILLS HOLMES, MARK S. RHODES, APPLEMAN ON INSURANCE 2d § 3.2 (1st ed.1996) states:

> "The classic example of first-party insurance is property insurance. In first-party property insurance, the damage to the insured's property (say, e.g., your house or your airplane) is an **immediate, direct diminution of the insured's assets.** The insurance proceeds are then paid by the first-party insurer directly to the insured to redress ("indemnify") the insured's actual, direct loss."

(emphasis in original). In contrast, third-party insurance requires the insurer to perform its duty to indemnify not directly to the insured but directly, on the insured's behalf, to a third-party claimant injured by the insured's conduct. *See id.*

at § 3.3. Third-party insurance involves payment of proceeds for the insured's indirect loss:

> [I]f an insured negligently injures a person not in privity of the insurance contract, that third party has a claim usually in tort against the insured. The third party's claim is not a contract claim under the liability insurance contract. But if the third party reduces its claim to a judgment (or a settlement between the insured, insurer and third party), the insured will suffer a loss. However, the insured's loss is "indirect" and the third party's loss is "direct." The liability insurer reimburses ("indemnifies") its insured for the insured's indirect loss, but payment in practical effect runs directly to the third-party claimant. The liability insurer essentially reimburses its insured for any liability it may have to the third party by paying the third party on the insured's behalf and benefit. The insured is only a conduit for transferring the insurance proceeds from the liability insurer to the third party.

*Id.*

■ St. Paul contends that Hartman has no viable cause of action under article 21.55, for a number of reasons. First, Hartman's claim is not a first-party claim, but rather a third-party claim under general liability policies, making 21.55 inapplicable on the facts because St. Paul agreed thereby to indemnify Hartman only for amounts he became legally obligated to pays as damages to third parties.[2] Because a claim for breach of the duty to defend under a third party policy is not a

---

2. The Court finds St. Paul's argument to be persuasive inasmuch as a claim for statutory penalties under article 21.55 for failure timely to pay a claim under an insurance policy is not a separate cause of action. *Lusk v. Puryear,* 896 S.W.2d 377, 380 (Tex.App.—Amarillo 1995, no writ). Instead, when an insured brings such a claim, the insurer's entire liability—both on the insurance policy and under article 21.55—is put in issue as one cause of action. *Id.* Hartman's cause of action for

breach of St. Paul's duty to defend was litigated in St. Paul I and resulted in a judgment that St. Paul breached its contractual duty, but not a duty of good faith and fair dealing, nor any duties under article 21.21 of the Insurance Code. By virtue of the same—which constitute the liability for which any purported statutory penalty would attach—Hartman's damages would not be subject to penalty under 21.55. *See Maryland Ins. Co. v. Head,* 938 S.W.2d 27, 29 (Tex.1996).

first party claim, St. Paul argues, any claim for failure timely to pay the damages awarded for such a breach arguably would not constitute a first party claim. This conclusion is borne out by the fact that the Texas Department of Insurance, which was created to regulate the business of insurance in Texas[3] and which is charged with the duty to faithfully execute all laws respecting insurance,[4] maintains that a notice of prompt payment of claims is not a statutory requirement for general liability policies [i.e., 21.55 does not apply].[5]

Second, the relationship of the parties at the time of alleged "untimeliness" was no longer that of insured/insurer, but that of judgment creditor/judgment debtor. *See Stewart Title Guaranty Co. v. Aiello*, 941 S.W.2d 68, 71–72 (Tex.1997). Thus, article 21.55 is not available to Hartman because he is not making a first party claim against his insurer pursuant to a policy of insurance. He seeks, instead, a penalty for his judgment debtor's purported tardiness in paying adjudicated contract damages.

While the Court finds these arguments persuasive, it is most persuaded that article 21.55 affords no relief because what Hartman is presenting appears not to be a "claim" for acceptance or rejection as contemplated by the statute, but instead an action pursuant to his execution of an adjudicated right.[6] Even assuming arguendo that Hartman presented St. Paul with the type of claim contemplated by article 21.55

back in March of 1992, St. Paul appears to have complied with the statute by tendering a defense subject to a reservation of rights. *See Burton v. State Farm Mutual Automobile Ins. Co.*, 869 F.Supp. 480, 485 (S.D.Tex.1994).[7]

Based on the foregoing, the Court hereby **GRANTS** St. Paul's motion for summary judgment that as a matter of law article 21.55 is inapplicable to the facts alleged, and **DENIES** Hartman's motion for summary judgment on the same basis.

**3.** *See* Tex.Ins.Code Ann. art. 1.01A (Vernon Supp.1998).

**4.** *See* Tex.Ins.Code Ann. art. 1.10 (Vernon Supp.1998).

**5.** *See* Tex. Dept. of Ins., Property & Casualty Filings Made Easy (3–96 ed.) at Intro–6.

**6.** At the time of briefing, this "adjudicated right" was not in the posture of a final judgment, but constituted a final ruling on the merits of St. Paul's underlying liability. *See Seagraves v. Wallace*, 69 F.2d 163, 164 (5th Cir.1934) (where, on reversal, mandate is issued requiring a specific judgment be entered, there is a final adjudication). Since then, the Court has entered final judgment. For purposes of this analysis, however, lack of

technical finality at the time is irrelevant because it does not change the nature of the underlying right.

**7.** Interestingly, the *Burton* court determined that "art[icle] 21.55 does not require insurance carriers to pay claims promptly. Rather, it requires carriers to notify claimants promptly in writing of the acceptance or rejection of their claim." *Burton*, 869 F.Supp. at 485. Hartman does not allege, nor would res judicata allow him now to do so, that St. Paul did not comply with the statute's timetable in accepting or rejecting his claim when Hartman notified St. Paul of the Wilcox matter in March of 1992.