**SENTRY INSURANCE CO., Plaintiff,**

v.

**GREENLEAF SOFTWARE, INC., Defendant.**

No. Civ.A. 3:99CV1232X.

United States District Court,
N.D. Texas,
Dallas Division.

March 25, 2000.

---

Charles W Hurd, Fulbright & Jaworski, Houston, TX, for Sentry Insurance Co, plaintiff.

David Sterling White, Thompson & Knight, Dallas, TX, for Greenleaf Software Inc, defendant.

Harlan A Martin, JAMS/Endispute, Dallas, TX, ADR Provider pro se.

1. Pltf's App. at 2.

2. *Id.* at 3.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment filed December 10, 1999, Defendant's Response filed January 3, 2000, and Plaintiff's Reply, filed January 24, 2000. Also before the Court is Defendant's Motion for Partial Summary Judgment filed December 22, 1999, Plaintiff's Response, filed January 24, 2000 and Defendant's Reply filed February 10, 2000. For the reasons more fully discussed below, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Partial Summary Judgment is GRANTED IN PART.

## BACKGROUND

This is an insurance coverage dispute. Greenleaf entered into a contractual relationship with a company doing business under the name Frontline. Frontline manufactures "Serialtest," a program "designed to test the integrity of communications between computers ..."[1] Greenleaf contractual agreements obligated Greenleaf not to "not modify or translate [the Serialtest Product] ... or prepare any derivative works therefrom ..."[2] Greenleaf then proceeded to develop, advertise, and sell a Windows based version of the Serialtest software in apparent violation of that agreement. Sentry claims that it owed no duty to defend or indemnify Greenleaf for the lawsuit/settlement[3] ("the Frontline case") in which Greenleaf apparently acknowledged some violations over copyright, intellectual property, and advertising. Greenleaf, of course, disagrees and complains that Sentry should indemnify and reimburse it under their insurance agreement.

3. Nothing in this opinion should be or is intended to opine on the guilt or innocence of Greenleaf for the alleged violations of various federal, state and common laws.

### STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the summary judgment record demonstrates that no genuine issue of material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to establish with significant probative evidence that a material issue of fact exists. *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1371 (5th Cir.1994). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

### ANALYSIS

At issue here is whether or not Greenleaf's violation of its contractual agreements constituted an

'advertising injury' arising out of any act, error or omission with respect to computer consultant or programmer professional services rendered by, or that should have been rendered by:

1. The insured; or

2. Any person or organization:

 a. For whose acts, errors or omissions the insured is legally responsible; or

 b. From whom the insured assumed liability by reason of a contract or agreement.

Excluded professional services include, but are not limited to:

1. The preparation, review, approval, or sales and/or licensing of electronic data processing, program design, specifications, manuals, manuals or other instructions; or

2. Services rendered in collecting, summarizing, analyzing, publishing, or furnishing statistical or other data.[4]

Sentry contends that this exclusion precludes coverage for liability arising out of Greenleaf's preparation, sales or licensing of the ViewComm software. Greenleaf, on the other hand, contends that this exclusion does not cover at least one claim brought by Frontline, that of advertising in violation of the Lanham Act, specifically 15 U.S.C. § 1125(a)(1)(B). If Sentry is correct, no duty to defend exists. If Greenleaf is right, then a duty exists and Sentry is in violation of the policy agreement.

■ Texas law requires this court to compare the underlying plaintiff's complaint against the language of the insurance policy. *New York Life Ins., Co. v. Travelers Ins., Co.*, 92 F.3d 336, 338 (5th Cir.1996); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24–25 (Tex.1965). An insurer is required to defend an insured where at least one claim alleged in the complaint falls within the policy's coverage. *New York Life Ins. Co.*, 92 F.3d at 338; *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex.1997). The facts, not the causes of action (or theories of recovery) are determinative of a duty to defend. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *Continental Cas. Co. v. Hall*, 761 S.W.2d 54, 56 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Only the facts alleged, not the legal conclusions, are reviewed to determine if a claim is covered. *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir.1997). Exclusions are subject to an even greater level of scrutiny than other policy provisions, *Lubbock County Hosp. Dist. v. National Union*

---

4. Pltf's App. at 72.

*Fire Ins., Co.,* 143 F.3d 239, 242 (5th Cir. 1998), and ambiguities are to be strictly construed in favor of the insured. *Travelers Indem. Co. v. Citgo Petroleum Corp.,* 166 F.3d 761, 769 (5th Cir.1999).

Sentry relies solely on the professional exclusions clause to support its motion for summary judgment. Therefore, Sentry implicitly concedes that Frontline alleged an advertising injury and that without the professional exclusions clause Sentry is obligated to defend and indemnify Greenleaf for the underlying case. Paragraph 28 of Frontline's Complaint alleges that

> Greenleaf's unauthorized use of Frontline's proprietary trade dress in commercial advertising and promotion, misrepresents the nature, characteristics, qualities, and origin of Greenleaf's ViewComm for Windows in violation of 15 U.S.C. Sec. 1125(a)(1)(B). Certain advertisements for Greenleaf's ViewComm for Windows Contain pictures of its user interface screens which are so similar to Frontline's proprietary screens that users familiar with the Serialtest Product are to believe that ViewComm for Windows and/or Greenleaf are affiliated with Frontline and/or the Serialtest Product.[5]

Consequently, the only thing this Court must determine is the applicability of the professional services exclusion clause · to the. claims of Frontline. The allegations under the Frontline complaint potentially state a claim covered under the advertising injury provision[6] of the Sentry policy. Clearly a violation of 15 U.S.C. § 1125(a)(1)(B)[7] constitutes an advertising injury under the policy.

## I. Professional Services Exclusion

 The professional services exclusion does not save Sentry. Sentry suggests that the Lanham Act violations complained of are not the result of advertising, but stem from the underlying violations of copyright law, and other thefts of intellectual property. Sentry's arguments are unpersuasive. Frontline's Lanham Act claim is not so narrow. Although it is true that Texas law requires a showing of proximate cause between the alleged injury and the advertising, *Industrial Molding Co. v. American Mfrs. Mut. Ins. Co.,* 17 F.Supp.2d 633, 640 (N.D.Tex.1998); *Bay Electric Supply, Inc. v. Travelers Lloyds Ins. Co.,* 61 F.Supp.2d 611, 618–19 (S.D.Tex.1999), Greenleaf, meets this test. A plaintiff need only allege that damages from trade-dress infringement under the Lanham Act were caused by advertising. *Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1312 (9th Cir.1997); McCarthy on Trademarks and Unfair Competition § 25:26, at 25–47.

The allegation that Greenleaf made "unauthorized use of Frontline's proprietary trade dress in commercial advertising and promotion" is sufficient in and of itself to state a claim under the Lanham Act without any regard to the underlying computer program or the alleged intellectual property claims. *See DecisionOne v. ITT Hartford Ins. Group,* 942 F.Supp. 1038, 1042 (E.D.Pa.1996). Frontline's claims offer no limitation to computer programming.

---

**5.** Pltf's App. at 8.

**6.** The applicable clause states
 (b) This insurance applies to:....
 (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products, or services;

**7.** The statute states in relevant part:
 (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
 (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 15 U.S.C. § 1125(a)(1)(B).

Rather, the allegations of false advertising go to the appearance of an advertisement which resembles a product owned and licensed by Frontline.

■ The critical question is whether or not the advertising complained of amounted to a professional service. It did not. "To qualify as a professional service, the act must arise out of acts particular to the individuals specialized vocation. We do not deem an act a professional service merely because it is performed by a professional. Rather, it must be necessary for the professional to use his specialized knowledge or training." *Atlantic Lloyd's Ins. Co. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476–77 (Tex.App.—Dallas 1998, pet. denied). If Sentry's interpretation of its exclusionary clause were the appropriate one, its policy would be all but worthless as Greenleaf's is in the business of software development, software marketing, and software sales. In other words, all Greenleaf's actions can, in some manner or another, be traced back to computer professionals. The trade dress infringements did not require a professional service. Pointing a camera at some computer screens and taking a picture does not require a computer science degree, or for that matter, any degree at all. Although the Court may be oversimplifying the process for producing the disputed advertisements, the point is the same: No computer expertise is required to produce the advertisements.

## II. Reimbursement of Incurred Costs

■ Greenleaf is entitled to reimbursement of attorney's fees and costs incurred in defending the Frontline suit accruing after April 21, 1998. Given that (1) at least one claim alleged by Frontline arises out of an advertising injury; (2) that advertising injuries are covered under the policy, and; (3) that the professional services exclusion does not apply, Sentry is liable to Greenleaf for the costs incurred in defending the Frontline lawsuit. *See Coastal Iron Works v. Petty Ray Geophy-*

*sical,* 783 F.2d 577, 585 (5th Cir.1986); *Willcox v. American Home Assur. Co.,* 900 F.Supp. 850, 857 (S.D.Tex.1995). The Frontline lawsuit was filed in 1997. The parties agree that Sentry was notified of the lawsuit on April 21, 1998. Under the policy, Greenleaf was required to at least seek Sentry's approval prior to expending funds in its defense. Failure to so notify Greenleaf forecloses any claim for prenotice reimbursement. *See Nagel v. Kentucky Cent. Ins. Co.,* 894 S.W.2d 19, 21 (Tex.App.—Austin 1994, writ denied). Greenleaf invites this Court to adopt holdings in other states that allow for collection of pre-notice defense costs where there is no prejudice to the insurer. Although this Court is confident that Sentry's response to Greenleaf would not have differed if the notice was given at the time of the suit, this Court declines to alter the parties contractual agreement. As a result, Greenleaf is not entitled to fees and costs incurred prior to April 21, 1998.

## III. Article 21.55

Greenleaf asserts that under Tex.Ins. Code Ann, art. 21.55, § 6 they are entitled to reasonable attorney's fees, 18% per annum of the amount of the claim and any damages arising from Sentry's failure to pay Greenleaf's claim. Greenleaf submitted a valid notice of suit on April 21, 1998. Additionally, on May 17, 1999, Greenleaf submitted a demand for reimbursement with copies of the attorney's fee and costs. Sentry denied, and continues to deny coverage under the policy. Article 21.55 provides:

(f) Except as otherwise provided, if an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required, as provided in Section 2 of this article, for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than 60 days, the insurer

shall pay damages and other items as provided in Section 6 of this article.

Tex.Ins.Code Ann, art. 21.55, § 3(f) (Vernon Supp.1999). Sentry argues that Greenleaf is not entitled to the statutory damages and penalty under the Article 21.55 definition of "claim."[8] Sentry advances two rationales for this theory. Neither withstand examination.

First, Sentry suggests that Greenleaf's letter of May 17, 1999 was not a first party claim. This is a ludicrous statement. Greenleaf is *the* insured party. It did not submit this claim for reimbursement "for its health." Greenleaf clearly intended for Sentry to come to its aid and defend this lawsuit. Sentry failed to do so. Consequently, Greenleaf submitted its claim for reimbursement. Clearly this is a first party claim.

■ Second, Sentry states that "to the extent it sought a defense from Sentry for the Frontline lawsuit, the 'claim' did not seek payment 'by the insurer directly to the insured,' as required by Art. 21.55." Pltf's Resp. at 9. Under this interpretation of the statute, anytime an insured seeks to enforce its policy and have the insurer fulfill its obligation to defend, the insurer can refuse, force the insured to defend the lawsuit and swoop in at the last minute to "pay the insured" for its expenses and avoid fronting the defense costs. By failing to pay for Greenleaf's defense, Sentry is now obligated to pay the cost of that defense directly to Greenleaf. As such, Greenleaf's claim is a first party claim falling under Article 21.55. By failing to pay Greenleaf's claim, Sentry violated Article 21.55 of the Texas Insurance Code. Therefore, Sentry is liable for the statutory penalty of 18% as well as the actual costs incurred by Greenleaf in defending the Frontline suit.

The 18% penalty begins to accrue the earlier of the date of the accrual or the date this suit was filed. *Dunn v. Southern Farm Bureau Cas. Ins.*, 991 S.W.2d 467, 478 (Tex.App.—Tyler, 1999, pet.denied). The date of the accrual of damages and the statutory 18% penalty is July 16, 1999 (60 days after May 17, 1999). This suit was filed on May 28, 1999. Therefore, the 18% penalty began to run on May 28, 1999.

### CONCLUSION

For the foregoing reasons, the Court FINDS that Sentry owed Greenleaf a duty to defend the Frontline litigation, that Sentry breached its duty to defend, that Sentry must reimburse Greenleaf for its reasonable and necessary attorney's fees incurred in the Frontline litigation after April 21, 1998, and that Sentry is liable to Greenleaf for an 18% penalty on costs incurred after May 28, 1999 under Article 21.55 of the Texas Insurance Code for failing to reimburse Greenleaf for the incurred defense costs. Further, as Greenleaf did not move for summary judgment on its bad faith claim under Article 21.21 of the Texas Insurance Code or on its claims for attorney's fees in defending this action, those issues are reserved for trial. The Court reminds the parties of local Rule 56.2 allowing only one summary judgment motion per side.

Further, the parties are ORDERED to submit a proposed judgment for the costs, fees, and penalty awarded to date in this case on or before the 14th day of April, 2000.

Finally, Plaintiff's Motion for Summary Judgment is DENIED.

---

8. 'Claim' means a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary.
Tex Ins.Code Ann., art. 21.55 § 1(3) (Vernon 1998).