**RX.COM INC., Plaintiff,**

v.

**HARTFORD FIRE INSURANCE CO., Defendant.**

**No. CIV.A. H–04–2645.**

United States District Court, S.D. Texas, Houston Division.

March 28, 2005.

James L. Cornell, Jr., Cornell & Pardue, Patrick L. Hughes, Haynes Boone LLP, Houston, for Rx.com, Inc., Plaintiff.

Christine Kirchner, Chamberlain Hrdicka White, Steven Jon Knight, Chamberlain Hrdlicka et al., Houston, for Hartford Fire Insurance Company, Defendant.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Plaintiff, Rx.com, has sued its liability insurer, Hartford Fire Insurance Co., for breach of contract and violations of Articles 21.21 and 21.55 of the Texas Insurance Code, alleging that Hartford breached its liability insurance policy when it refused to defend Rx.com in an underlying suit. Hartford has moved to dismiss the article 21.55 claim on the basis that it does not apply to an insured's demand for a defense against a third-party suit. (Docket Entry No. 4). The parties have responded, replied, and argued the dismissal motion in a hearing before this court.[1] (Docket Entry Nos. 7, 8, 10, 16). Based on the pleadings, the motion, response, and replies, the arguments of counsel, and the applicable law, this court denies the motion to dismiss, for the reasons stated below.

### I. Background

Rx.com is a Delaware corporation with its principal place of business in Texas. Hartford is a Connecticut corporation with its principal place of business in that state. Rx.com obtained a comprehensive general liability (CGL) policy from Hartford covering the period between October 28, 1999 and October 28, 2000. According to the complaint, "[o]n or about May 15, 2000, a suit was filed against Rx.com." Rx.com provided Hartford timely notice of the suit. The next day, Hartford "acknowledged

1. Each party has also submitted several letter briefs arguing its position and updating the court on the appeals status of pertinent state and federal cases. They include letters from Knight, counsel for Hartford, of 2/11/05, 1/7/05, 12/20/04 and 9/29/04; letters from Cornell, counsel for Rx.com, of 2/14/08, 1/20/05, 12/27/04, 11/12/04 and 10/8/04.

that it received the notice of Rx.com's loss, but later refused to indemnify or defend Rx.com." Rx.com retained its own counsel to defend the suit and made another demand for defense and indemnity on September 5, 2000. Hartford continued to deny that it owed Rx.com any duty to indemnify, but agreed to defend Rx.com under a reservation of rights agreement. Rx.com alleged that the reservation of rights agreement created "a conflict of interest entitling Rx.com to select its own counsel at the expense of and to be paid by the carrier." Rx.com hired its own lawyer. (Docket Entry No. 1, ¶ 9). Rx.com alleged that without its consent, Hartford retained a different attorney who filed a motion to substitute counsel and made an appearance in the case "without even checking with his new client—in fact, doing so even after he was told otherwise." (*Id.*, ¶ 11). On May 1, 2001, Hartford agreed to pay a "reasonable" rate for the initial work performed by the attorney Rx.com had hired. In this suit, Rx.com claims that Hartford has refused to pay invoices for the work the attorney performed from June 2000 to June 2001, totaling $603,919.97. (*Id.*, ¶ 13).

## II. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) dismissal is appropriate only if there is no set of facts that could be proven consistent with the complaint allegations that would entitle the plaintiff to relief. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir.2003). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Id.* In order to avoid dismissal, however, a court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000)).

In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the contents of the pleadings, with one important exception. In *Collins*, 224 F.3d at 498–99, the Fifth Circuit approved the district court's consideration of documents the defendant attached to a motion to dismiss. In *Collins* and later in *Scanlan*, the Fifth Circuit made it clear that "such consideration is limited to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." 343 F.3d at 536, citing *Collins*, 224 F.3d at 498–99. Other courts approve the same practice, stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993); *see also Field v. Trump*, 850 F.2d 938, 949 (2d Cir.1988); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994).

## III. Analysis

The parties vigorously contest the applicability of article 21.55 of the Texas Insurance Code, also known as the Prompt Payment of Claims Act. Article 21.55 requires insurance companies to acknowledge, investigate, and pay an insured's valid claims within statutory deadlines or face an additional 18 percent penalty. Rx.com argues that article 21.55 applies when an insured tenders a lawsuit to its insurer for a defense. Hartford argues that article 21.55 applies only to "first party claims," not to the duty to defend an insured against a third-party lawsuit.

A number of Texas state courts—and federal courts interpreting Texas law—have addressed this same question and arrived at different answers. The only Texas Supreme Court decision approaching this issue suggests that article 21.55

applies to the duty to defend. In *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996), the Court addressed the assignment of an insured's right to recover against its insurer. The Court also briefly addressed a hypothetical third-party liability policy involving a plaintiff, "P," defendant, "D," and insurer, "I."

> [W]hen issues of coverage and the duty to defend arise, it is not unusual for I or D or both to attempt to adjudicate them before P's claim is adjudicated. Disputes between I and D can often be expeditiously resolved in an action for declaratory judgment while P's claim is pending. If successful, D should be entitled to recover attorney fees. D may also be entitled to recover a penalty against I equal to eighteen percent of the claim. TEX. INS. CODE. art. 21.55, § 6.

925 S.W.2d at 714 (internal citations omitted). The Texas Supreme Court's statement that a defendant "may" recover article 21.55 damages was clearly not central to the holding. This passage has, however, persuaded some courts that the Texas Supreme Court would interpret article 21.55 to apply to an insured's demand for a defense. *See, e.g., Hous. Auth. of Dallas v. Northland Ins. Co.*, 333 F.Supp.2d 595, 602–03 (N.D.Tex.2004) (conducting an *Erie* analysis and concluding that article 21.55 applies to defense claims).

One intermediate Texas court has also applied article 21.55 to duty to defend claims. *See Northern County Mut. Ins. Co. v. Davalos*, 84 S.W.3d 314 (Tex.App.— Corpus Christi, 2002), *rev'd on other grounds*, 140 S.W.3d 685 (Tex.2004). *Davalos* relied on the text of article 21.55 to find that the statute applied to an insurer's failure to defend. On review, the Texas Supreme Court reversed the appeals court's conclusion that Davalos's insurer breached prompt payment requirements. The Texas Supreme Court expressly declined to reach the question of article 21.55's applicability:

> We conclude that Northern's conduct in this case did not violate the terms of article 21.55 whether or not that statute properly applies to a liability insurer who fails to promptly accept or reject its insured's defense.... Thus, we need not determine the scope of this statute to conclude that the court of appeals erred in affirming the award of damages and attorney's fees under it.

140 S.W.3d at 691. *Gandy* and *Davalos* are the only Texas authorities that Rx.com cites in support of its argument that article 21.55 applies.

Federal district courts in Texas have consistently agreed that article 21.55 applies to an insured's claim for a defense. In the last five years alone, over ten federal court decisions have held, with varying levels of analysis, that article 21.55 applies to claims such as Rx.com's allegation that its CGL insurer breached the duty to defend.[2]

---

2. *See Hous. Auth. of Dallas v. Northland Ins. Co.*, 333 F.Supp.2d 595, 603 (N.D.Tex.2004); *Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F.Supp.2d 648, 653 (N.D.Tex.2004); *Mathews Heating & Air Conditioning L.L.C. v. Liberty Mut. Fire Ins. Co.*, 2004 WL 2451923, at *7 (N.D.Tex. Oct.21, 2004); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka*, 267 F.Supp.2d 601, 632 n. 19 (E.D.Tex.2003); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 2003 WL 21662829, at *3 (N.D.Tex. July 15, 2003) *aff'd in part, rev'd in part*, 382 F.3d 546 (5th Cir.2004); *Luxury Living, Inc. v. Mid–Continent Cas. Co.*, 2003 WL 22116202, at *20 (S.D.Tex. Sept.10, 2003); *Mt. Hawley v. Steve Roberts Custom Builders, Inc.*, 215 F.Supp.2d 783, 794 (E.D.Tex.2002); *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F.Supp.2d 746, 751 (N.D.Tex.2001); *Sentry Ins. Co. v. Greenleaf Software, Inc.*, 91 F.Supp.2d 920, 925 (N.D.Tex.2000); *vacated*, 2000 WL 33254495 (N.D. Tex. Apr 18, 2000); *Ryland Group, Inc. v. Travelers Indem. Co.*, 2000 WL

A recent opinion from an intermediate Texas appeals court squarely holds that article 21.55 does not apply to claims for a defense. In *TIG Insurance Co. v. Dallas Basketball Ltd.*, 129 S.W.3d 232 (Tex. App.—Dallas 2004, pet. denied), the Dallas Court of Appeals rejected the dicta in *Gandy*, its sister court's holding in *Davalos*, and the conclusion of numerous federal district courts. The court found that article 21.55 does not apply to claims for a defense because such claims are third-party claims, not first-party claims. The court held that damages for refusing to defend an insured are breach of contract damages, not subject to article 21.55. Finally, the court ruled that the structure of article 21.55 makes it unworkable when applied to an insured's demand for a defense. On February 11, 2005, the Texas Supreme Court denied a petition to review the *Dallas Basketball* decision.

A recent unpublished Fifth Circuit decision also states, without discussion, that article 21.55 does not apply to claims for a defense. *See SingleEntry.com, Inc. v. St. Paul Fire & Marine Ins. Co.*, 117 Fed. Appx. 933, 938 (5th Cir.2004). Although Fifth Circuit rules allow citation of unpublished cases, *see* 5th Cir. R. 47.5.4, *Singleentry.com's* brief mention of article 21.55 contains no analysis. This unpublished opinion relies on a federal district court case for the conclusion that article 21.55 did not apply. *See* 117 Fed.Appx. at 934 (citing *Hartman v. St. Paul Fire & Marine Ins. Co.*, 55 F.Supp.2d 600 (N.D.Tex.1998)). The court in *Hartman* found article 21.55 inapplicable to breach of the duty to defend claims. The judge who wrote *Hartman* later reversed this view in *Travelers Indemnity Co. of Connecticut v. Presbyterian Healthcare Resources*, 313 F.Supp.2d 648, 653 (N.D.Tex.

2004) and *Mathews Heating & Air Conditioning L.L.C. v. Liberty Mutual Fire Insurance Co.*, 2004 WL 2451923, at *7 (N.D.Tex. Oct.21, 2004). The latter of these cases rejects the *Dallas Basketball* decision. The two subsequent, contrary holdings leave the vitality of *Hartman* and this aspect of *SingleEntry.com* in doubt.

*Erie* principles require this court to apply Texas law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *General Accident Ins. Co. v. Unity/Waterford–Fair Oaks, Ltd.*, 288 F.3d 651, 653 (5th Cir.2002). As noted, Texas intermediate courts addressing the issue conflict. In *Davalos*, the court found that article 21.55 did apply to claims for breach of the duty to defend. In *Dallas Basketball*, a different appeals court reached the opposite conclusion. The Texas Supreme Court's statement in *Gandy* provides some guidance, but it is *dicta*. This court must make an *"Erie* guess" as to whether the Texas Supreme Court would apply article 21.55 to Rx.com's claim for breach of the duty to defend the underlying suit.

A federal court "is bound by *Erie* to rule as it believes the state's supreme court would." *Ridglea Estate Condominium Assoc. v. Lexington Ins. Co.*, 398 F.3d 332, 337 (5th Cir. Jan.21, 2005). "When making an Erie-guess in the absence of explicit guidance from the state courts, [this court] must attempt to predict state law, not to create or modify it." *Assoc. Inter. Ins. Co. v. Blythe*, 286 F.3d 780, 783 (5th Cir.2002) (citation omitted). Federal courts look to precedents established by intermediate state appellate courts "only when the state supreme court has not spoken on an issue." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565

33544086, at *12 (W.D.Tex. Oct.25, 2000); *see also Legacy Partners, Inc. v. Travelers Ins. Co.*, 2002 WL 500771, at *5 (N.D.Cal. Mar.29,

2002) (applying Texas law), *aff'd*, 83 Fed. Appx. 183, 2003 WL 22905287, at *1 (9th Cir. Dec.9, 2003).

(5th Cir.2004), citing *Webb v. City of Dallas,* 314 F.3d 787, 795 (5th Cir.2002). If "persuasive data" convinces a court that the state's highest court would decide otherwise, that court need not defer to lower state appellate decisions. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 558 (5th Cir.2002). In making the *"Erie* guess," this court is guided by the statute itself, Texas Supreme Court and appellate court decisions applying that statute, and the reasoning from those and other federal courts' decisions.

### A. Article 21.55

The purpose of article 21.55, according to Texas courts, is to "ensure prompt payment of insurance claims by penalizing the insurer when the insurer fails to follow the steps required by the article." *J.C. Penney Life Ins. Co. v. Heinrich,* 32 S.W.3d 280, 289 (Tex.App.—San Antonio 2000, pet. denied). The statute "is simple and its language unambiguous." *Northwestern Nat. County Mut. Ins. Co. v. Rodriguez,* 18 S.W.3d 718, 723 (Tex.App.—San Antonio 2000, pet. denied). Section 1 defines five terms used in article 21.55. The key term for present purposes is "claim." " 'Claim' means a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." Art. 21.55 § 1(3). " 'Notice of claim' means any notification in writing to an insurer, by a claimant, that reasonably apprises the insurer of the facts relating to the claim." Art. 21.55 § 1(5). The statute does not define "first party claim."

Section 2 addresses when an insurer must acknowledge and investigate a claim:

(a) Except as provided in Subsection (d) of this section, an insurer shall, not later than the 15th day after receipt of notice of a claim . . .

(1) acknowledge receipt of the claim;

(2) commence any investigation of the claim; and

(3) request from the claimant all items, statements, and forms that the insurer reasonable believes, at that time, will be required from the claimant. Additional requests may be made if during the investigation of the claim such additional requests are necessary.

(b) If the acknowledgment of the claim is not made in writing, the insurer shall make a record of the date, means, and content of the acknowledgment.

Art. 21.55 § 2. The next section controls an insurer's decision to accept or reject a claim:

(a) Except as provided by Subsections (b) and (d) of this section, an insurer shall notify a claimant in writing of the acceptance or rejection of the claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer, in order to secure final proof of loss.

(b) If the insurer has a reasonable basis to believe that the loss results from arson, the insurer shall notify the claimant in writing of the acceptance or rejection of the claim not later than the 30th day after the date the insurer receives all items, statements, and forms required by the insurer.

(c) If the insurer rejects the claim, the notice required by Subsections (a) and (b) of this section must state the reasons for the rejection.

(d) If the insurer is unable to accept or reject the claim within the period specified by Subsection (a) or (b) of this section, the insurer shall notify

the claimant, not later than the date specified under Subsection (a) or (b), as applicable. The notice provided under this subsection must give the reasons the insurer needs additional time.

(e) Not later than the 45th day after the date an insurer notifies a claimant under Subsection (d) of this section, the insurer shall accept or reject the claim.

(f) Except as otherwise provided, if an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required, as provided under Section 2 of this article, for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than 60 days, the insurer shall pay damages and other items as provided for in Section 6 of this article.

(g) If it is determined as a result of arbitration or litigation that a claim received by an insurer is invalid and therefore should not be paid by the insurer, the requirements of Subsection (f) of this section shall not apply in such case.

Art. § 21.55 § 3. Section 5(a) exempts several types of insurance policies from its requirements, none of which apply in this case.[3] If any insurer violates any of the above provisions after receiving notice of a claim, section 6 addresses the liability for damages:

In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.

Art. 21.55 § 6. Section 7 states that the provisions of article 21.55 are cumulative, not exclusive, of any other statutory or common-law remedy. Art. 21.55 § 7. Section 8 states that "[t]his article shall be liberally construed to promote its underlying purpose which is to obtain prompt payment of claims made pursuant to policies of insurance." Art. 21.55 § 8.

Hartford makes three principal arguments as to why article 21.55 does not apply to Rx.com's claim for breach of the duty to defend: (1) the statute covers only "first party claims" and duty to defend claims are excluded as third-party claims; (2) the statute applies only to claims paid directly to policyholders or beneficiaries and a claim for a defense is a claim for indirect reimbursement paid to attorneys; and (3) article 21.55's structure and operation make it unworkable when applied to an insured's demand for a defense. This court considers each argument in turn.

### B. Is Demand for a Defense a "First–Party Claim?"

■ Hartford contends that by its terms, article 21.55 cannot apply to a claim for a defense because such a claim is a third-party claim, not a first-party claim. As noted, section 1 of the Prompt Payment of Claims Act defines "claim" as "a first party claim ...." Art. 21.55 § 1(3). The Texas Supreme Court defines a "first-par-

---

**3.** Section 5 states, "This article does not apply to: (1) workers' compensation insurance; (2) mortgage guaranty insurance; (3) title insurance; (4) fidelity, surety, or guaranty bonds; marine insurance as defined by Article 5.53 of this code; or (6) a guaranty association created and operating under Article 9.48 of this code." Art. 21.55 § 5(a).

ty claim" as "one in which an insured seeks recovery for the insured's own loss." *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 53 n. 2 (Tex.1997). By contrast, in a third-party claim, "an insured seeks coverage for injuries to a third party." *Id.*

In *Dallas Basketball,* the Dallas Court of Appeals held that a demand for a defense is not a first-party claim.[4] "The entire structure of article 21.55 presumes a tangible measurable loss suffered by the insured for which he seeks payment from the insurance company." 129 S.W.3d at 239. The court distinguished defense demands from first-party claims, noting that

> article 21.55 is entitled "Prompt Payment of Claims." A demand for a defense under a liability policy is not a claim for payment. It is a demand that the insurance company provide a legal defense to the insured as required by the policy. The insurance company is not required to send a payment to the insured, prompt or otherwise, in response to a claim for defense.

*Id.* The *Dallas Basketball* court also rejected the argument that because an insurer's refusal to provide a defense forces its insured to pay for its own attorneys, a claim for breach of the duty to defend is a first-party claim. The court concluded that because "[t]he insured does not receive any direct payment as required by article 21.55," a defense demand is not a first-party claim. *Id.* Rather, a claim for breach of the duty to defend is a common-law contract claim for damages, and not "a claim under an insurance policy." *Id.* at 240; *see* Tex. Ins. Code Art. 21.55 § 6.

■ Rx.com argues that under the "majority view," an insured's demand that its insurer provide a defense is a first-party claim. *See, e.g., Westport Ins. Corp. v.*

*Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601, 632 n. 19 (N.D.Tex.2003) ("[T]he benefits under a policy's duty to defend represent a type of first party insurance to which Texas prompt payment statutes apply."); *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.,* 215 F.Supp.2d 783, 794 (N.D.Tex.2002) (discussing how "the duty to defend is a form of first-party insurance contained within the liability insurance policy"); *Luxury Living, Inc. v. Mid–Continent Cas. Co.,* 2003 WL 22116202, at *20–*21 (S.D.Tex. Sept.10, 2003) (noting that "[w]hile not unanimous on the subject, most courts in Texas have concluded" that defense claims are first-party claims). These decisions reason that although courts normally view claims asserted under liability policies as third-party claims, such policies can include both first-party and third-party claims. As one commentator has explained:

> It is true that the duty to defend is a piece of a liability insurance policy, and that liability insurance policies as a whole are often termed "third-party" policies. Precisely speaking, however, the duty to defend is a form of first-party insurance contained within the liability insurance policy (internal citation omitted).

Ellen S. Pryor, *Mapping the Changing Boundaries of the Duty to Defend in Texas,* 31 Tex. Tech. L. Rev. 869, 914 n. 317 (2000); *see also Ryland Group Inc. v. Travelers Indem. Co. of Ill.,* 2000 WL 33544086, at *12 (W.D.Tex. Oct.25, 2000) (noting although a claim for defense costs "may not be what is traditionally thought of as a first party claim, the claim does fit within the definition of 'claim' contained in

---

4. The court acknowledged that its decision was contrary to the holdings of many state and federal decisions and the Texas Supreme Court's *dicta* in *Gandy.* 129 S.W.3d at 240–

41 & n. 2. The court refused to follow these decisions, characterizing them as devoid of analysis, only "cursorily" considered, and "faulty" in reasoning. *Id.*

Article 21.55."); *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F.Supp.2d 746, 750 (N.D.Tex.2001) ("Here, Burlington has refused to pay defense costs for which it is liable to Rubalcava.... This claim is now a first party claim and the statutory penalty under Art. 21.55 will apply to such sums.").

■ An insurer owes the duty to defend to the insured, not to a third party, even when the policy also covers a third party's claims against that insured. *See, e.g., Sentry Ins. Co. v. Greenleaf Software, Inc.*, 91 F.Supp.2d 920, 925 (N.D.Tex.2000), *vacated by agreed order*, 2000 WL 33254495, at *1 (N.D.Tex. Apr.18, 2000). In *Sentry*, the insurer argued that the policyholder's claim for a defense was not a first-party claim. The court found this argument to be "a ludicrous statement. Greenleaf is *the* insured party. It did not submit this claim for reimbursement 'for its health.' Greenleaf clearly intended for Sentry to come to its aid and defend this lawsuit.... Clearly this is a first party claim." *Id.* at 925.

Courts have also rejected the arguments, advanced by Hartford and set out in the *Dallas Basketball* opinion, that defense costs represent contract damages. *See, e.g., Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F.Supp.2d 648, 653 (N.D.Tex.2004) (noting that in the duty to defend context, courts have "resolved this precise issue" and found "such a claim would be viable").[5]

This court joins most of the state and federal courts to have considered the issue in concluding that the duty to defend component of a liability policy is a first-party claim under article 21.55. The definition of "claim" contained in article 21.55 § 1(3) does not exclude claims based on the duty to defend on the ground that they are third-party, rather than first-party, claims.

## C. Are Claims for a Defense Paid "Directly to the Insured?"

Hartford argues that article 21.55 cannot apply to defense claims because the statute defines "claims" to require payment "by the insurer directly to the insured or the beneficiary." Art. 21.55 § 1(3). Because a demand for a defense requires the insurer to provide legal representation and not to pay a claimant an amount of money, Hartford contends that payments are not paid "directly to the insured" and cannot be subject to article 21.55. The court in *Dallas Basketball* analyzed the statute the same way and concluded that article 21.55 cannot apply to defense claims. "When an insurance company provides its insured with a defense, the company then controls the defense and pays the attorneys' fees associated with the case to the attorney engaged to represent the insured. The insured does not receive any direct payment as required by Article 21.55." 129 S.W.3d at 239. Article 21.55 "presumes a tangible, measurable loss suffered by the insured for which he seeks payment from the insurance company." *Id.* Hartford argues that an insured does not suffer a "loss" when it is denied a defense by its insurer, but only incurs an indirect diminution of time and money: "Any money paid by the insurance company necessarily goes to someone other than the insured. The mere fact that an in-

---

**5.** As noted, the judge in *Presbyterian Healthcare* had previously ruled in another case that article 21.55 does not apply to defense claims. *See Hartman v. St. Paul Fire & Marine Ins. Co.*, 55 F.Supp.2d at 604. *Hartman* is the sole cited federal district court case finding article 21.55 inapplicable. The judge who authored *Hartman* has retreated from that view in subsequent cases. *See Presbyterian Healthcare*, 313 F.Supp.2d at 653; *Mathews*, 2004 WL 2451923, at *7 (considering and rejecting arguments set out in *Dallas Basketball*).

sured may be inconvenienced by a third party's lawsuit against it—such as paying attorneys [sic] fees, incurring time away from personal business affairs as a result of the time-intensive lawsuit, etc.—does not transform the nature of the claim into a first party insurance claim." (Docket Entry No. 8, p. 7).[6]

■ A claim for defense costs is either paid to, or for the benefit of, the insured. The "paid ... directly" language distinguishes first-party from third-party claims, but does not make a claim for a defense a third-party claim. In the typical third-party liability claim, an insurer pays the claimant on behalf of the insured who has wronged the claimant in some way. When the claim is for a duty to defend, by contrast, the insurer either pays the insured, who pays or has paid an attorney, or pays the attorney directly on behalf of the insured. Article 21.55, defined to apply to first-party claims, includes claims made by "an insured or a policyholder ... or by a beneficiary named in the policy or contract." Article 21.55's requirement that claims be paid "directly to the insured" means that the article applies to first-party claims, not to third-party claims. Because an insured's right to a defense is a first-party right, article 21.55 applies to the duty to defend. *See* Pryor, *Mapping the Changing Boundaries of the Duty to Defend in Texas,* 31 TEX. TECH. L. REV. at 914 n. 317; *see also Rubalcava,* 148 F.Supp.2d at 750; *Ryland Group,* 2000 WL 33544086, at *12. Article 21.55's definition of "claim" reinforces this conclusion. *See* Art. 21.55

§ 1(3); *see also Sentry,* 91 F.Supp.2d at 925 (noting that a defense cost claimant "is *the* insured party [and] clearly intended for [its insurer] to come to its aid and defend this lawsuit").

The court in *Sentry Insurance* also pointed to another practical problem with interpreting the "paid... directly" language as Hartford advocates:

> Under this interpretation of the statute, anytime an insured seeks to enforce its policy and have the insurer fulfill its obligation to defend, the insurer can refuse, force the insured to defend the lawsuit, and swoop in at the last minute to "pay the insured" for its expenses and avoid fronting the defense costs. By failing to pay for Greenleaf's defense, Sentry is now obligated to pay the cost of that defense directly to Greenleaf.

91 F.Supp.2d at 925. Finally, as Rx.com points out, Hartford's interpretation of this section would make the prompt payment statute meaningless in some of the most common first-party insurance situations. Health insurers, for example, often pay an insured's claims directly to hospitals, doctors, and other health care providers. The fact that the insurer pays claims for an insured's loss indirectly does not immunize that insurer from article 21.55.

### D. Is Article 21.55 Unworkable As Applied to Claims for a Defense?

Citing *Dallas Basketball,* Hartford claims that article 21.55 cannot apply to defense demands. "Any attempt to apply

---

**6.** It is unclear whether Hartford argues that claims for a defense are excluded from article 21.55 because the insurer reimburses its insured for the legal fees incurred in defending a lawsuit or because the insurer pays the attorneys directly, rather than the insured. The second argument appears to be foreclosed by state court decisions interpreting article 21.55. In *Dunn v. Southern Farm Bureau Casualty Insurance Co.,* 991 S.W.2d 467, 473

(Tex.App.—Tyler, 1999 writ denied), the insurer argued that because article 21.55 defined "claimant" as a "person making a claim," it did not apply when a claimant is represented by an attorney. The court easily rejected this argument. "It is axiomatic that what a principal does through an agent, he does himself.... When a principal acts through an agent, it is as if the principal acts personally." 991 S.W.2d at 473.

the statute structure to a claim for defense is unworkable and, based on the language of the statute, clearly unintended by the Legislature." *Id.* at 239. Section 6 makes an insurer that violates article 21.55 liable for "the amount of the claim" and an additional 18 percent "of the amount of the claim." Hartford contends that a demand for a defense has no "amount" because it is only a request for a legal defense, not a claim for a specified amount of money. No "amount of such claim" can be determined until the insured obtains an attorney and receives a bill for services rendered. "[I]t is apparent that the legislature did not intend the deadlines and penalties of article 21.55 to apply to claims for a defense." *Dallas Basketball,* 129 S.W.3d at 242.

In addition, Hartford argues that article 21.55's timing requirements do not make sense as applied to claims for a defense. Section 3 triggers an insurer's deadlines for accepting or rejecting claims. An insurer has 15 business days to notify the claimant, starting after the date the insurer receives all the information it requires "to secure final proof of loss." Art. 21.55 § 2(a). When an insured demands a defense from its insurer, the insured "has not necessarily incurred any legal expenses or suffered any actual loss." *Dallas Basketball,* 129 S.W.3d at 240. Hartford questions how an insured would submit a "proof of loss" as required by section 3(a) if there is no actual loss until an insured is forced to obtain counsel to defend against the suit that the insurer refused to defend.

■ Rx.com responds that the requirements of article 21.55 can easily apply to defense claims, as numerous courts have held. (Docket Entry No. 17). Under section 2(a), an insured must first submit a written notice of claim. This written notice triggers the insurer's duties to acknowledge and investigate a potential claim. If the insurer requests more information to establish details of the claim, statutory deadlines begin to run once the insurer receives all items reasonably required from the insured. Rx.com denies that the initial notice must contain a specified amount of the insured's defense costs. The article 21.55 definitions section does not define "proof of loss." Rx.com argues that each request for defense payment can be a proof of loss. Rx.com again offers a comparison to first-party health insurance: "In the case of health insurance, the doctor provides professional services for the insured for which the carrier is obligated to pay. If it does not, the carrier will be subject to Article 21.55. No 'final proof of loss' is involved." (Docket Entry No. 13).[7]

Courts that have applied article 21.55 to insurers who refuse to pay defense costs have not encountered difficulty with "workability." *See, e.g., Rubalcava,* 148 F.Supp.2d at 750 (rejecting issue as to amount because the insurer "has refused to pay defense costs for which it is liable to Rubalcava. The amount of such costs is not before the Court and presumably will be presented to the fact finder"); *Sentry,* 91 F.Supp.2d at 925 (finding that the insurer "failed to [defend the lawsuit]. Consequently, Greenleaf submitted its claim for reimbursement. [ . . . ] Sentry is liable for the statutory penalty of 18% as well as the actual costs incurred by Greenleaf in defending the ... suit"); *Luxury Living,* 2003 WL 22116202, at *21 (stating that the insurer has refused to provide a defense or pay defense costs incurred by the insured, and requiring the insurer to provide a defense going forward, reimburse the insured's defense costs incurred to date, and

---

7. Rx.com also points to standard Texas auto and property insurance policies that have periodic payment components, noting that article 21.55 applies to both. (Docket Entry No. 23).

pay the statutory penalty on those costs plus reasonable attorneys' fees incurred in the duty to defend action). Like the insureds in *Rubalcava, Sentry,* and *Luxury Living,* Rx.com alleges that Hartford has failed to pay any defense costs. Courts can and have applied article 21.55 to such claims for defense costs.

A federal district court in Texas confronted a similar situation and reached the same result. In *Primrose,* 2003 WL 21662829, at *3, *aff'd in part, rev'd in part,* 382 F.3d 546 (5th Cir.2004), the trial court concluded that "there can be no question but that section 6's statutory penalties apply to claims made by an insured against a liability insurer for defense costs." 2003 WL 21662829, at *2. Following the trial, a jury found that a third-party liability insurer violated article 21.55 when it refused to defend its insured. The district court rejected the insurers post-trial arguments that the court had improperly calculated prejudgment interest and article 21.55 penalties. 382 F.3d at 551. On appeal, the Fifth Circuit affirmed every ruling except the prejudgment interest calculation. Without mentioning the article 21.55 penalties, the Fifth Circuit reversed the trial court's ruling that prejudgment interest begins to accrue when the insurer breached the policy by refusing to defend plaintiffs. Instead, the Fifth Circuit made an *"Erie* guess" that the Texas Supreme Court would hold that prejudgment interest accrues "based on the dates Plaintiffs paid each bill for attorney's fees rather than the date NAICO refused to defend Plaintiffs." *Id.* at 565. The court reasoned that the Texas Supreme Court would attempt to effectuate the goal of prejudgment interest, fully to compensate injured plaintiffs. The Fifth Circuit expressly re-

fused to consider two unpublished contrary intermediate appellate decisions and relied instead on *dicta* in *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 531 (Tex.1998). The Fifth Circuit concluded, "The goals of prejudgment interest laws, as expressed in *Johnson & Higgins,* are better served by a rule that such interest be calculated from the time a plaintiff actually loses the use of the money rather than when the actual breach occurred." *Id.* at 565. The Fifth Circuit did not address the Texas prompt payment statute, except to mention that the trial court had affirmed the jury's award of article 21.55 penalties, calculated in the same manner. *Id.* at 551. The insurer had argued and briefed its article 21.55 claims before the Fifth Circuit. Br. for Appellant at 55, *Primrose Operating Co. v. Nat'l Am. Ins. Co.,* 2003 WL 23917296 (5th Cir. Nov.20, 2003) (No. 03–10861). The Fifth Circuit affirmed the district court's refusal to overturn the jury verdict imposing article 21.55 damages for an insurer's refusal to defend.[8]

This court finds the Texas Supreme Court would apply article 21.55 to an insured's demand for a defense.

## IV. Conclusion

Hartford's motion to dismiss is denied.

---

8. Although the appellant argued the trial court erred in accruing prejudgment interest and article 21.55 penalties at the time of breach, rather than the time of loss, the Fifth Circuit apparently did not address the timing of article 21.55 penalties.