TIG INSURANCE COMPANY, Appellant,

v.

DALLAS BASKETBALL, LTD., Radical Mavericks, Ltd., Radical Hoops, Ltd., Radical Arena, Ltd., Radical Mavericks Management, L.L.C., and Mark Cuban, Appellees.

No. 05–03–00134–CV.

Court of Appeals of Texas, Dallas.

Feb. 25, 2004.

Rehearing Overruled April 5, 2004.

P. Michael Jung, James K. Peden, III, Strasburger & Price, P.C., James H.

Moody, III, Quilling, Selander, Cummiskey & Lownds, P.C., Dallas, for Appellant.

Thomas M. Melsheimer, Fish & Richardson, L.L.P., Geoffrey S. Harper, Kelly Dean Hine, Fish & Richardson P.C., Steven H. Stodghill, Lynn, Stodghill, Melsheimer & Tillotson, Dallas, for Appellees.

Before Justices MORRIS, WRIGHT, and BRIDGES.

## OPINION NUNC PRO TUNC

Opinion by Justice MORRIS.

In the trial court below, Dallas Basketball, Ltd., Radical Mavericks, Ltd., Radical Hoops Ltd., Radical Arena, Ltd., Radical Mavericks Management, L.L.C., and Mark Cuban (the "Mavericks") brought this suit contending that TIG Insurance Company wrongfully refused to defend them in a lawsuit alleging injuries arising out of the receipt of unsolicited facsimile transmissions in violation of the federal Telephone Consumer Protection Act. The Mavericks also contended TIG's failure to timely tender a defense violated article 21.55 of the Texas Insurance Code and obligated TIG to pay the Mavericks a penalty of eighteen percent per annum of the cost of defending against the underlying claims.

TIG responded that it had no duty to defend the Mavericks because the lawsuit did not allege an "occurrence" or an "advertising injury" as defined by the insurance policies it had issued to them. Furthermore, TIG argued article 21.55 does not apply to claims for a defense. The trial court agreed with the Mavericks and rendered judgment that TIG violated its duty to defend. The trial court also held that article 21.55 applied to the Mavericks'

claim for a defense and, therefore, TIG was liable for the eighteen percent penalty.

After reviewing the applicable law and the record on appeal, we conclude the claims alleged against the Mavericks in the underlying suits fell within the policies' definition of advertising injury and, therefore, coverage was invoked. We further conclude that claims for a defense do not fall within the scope of claims to which article 21.55 applies. Accordingly, we affirm the trial court's judgment in part and reverse it in part.

### I.

The pertinent facts of this case are largely undisputed. In December 2000, the Mavericks were named as defendants in a class action lawsuit that the parties refer to as the Rodriguez litigation. The Rodriguez plaintiffs alleged the Mavericks violated the Telephone Consumer Protection Act by sending unsolicited advertisements for basketball tickets to their telephone facsimile machines. Pursuant to the Act, the plaintiffs sought damages in the amount of $500 per advertisement. The Rodriguez plaintiffs later amended their suit to assert common law claims for trespass that allegedly caused property damage and for violations of their right to privacy. One year later, a second class action lawsuit was filed against the Mavericks alleging almost identical facts. This second suit, referred to as the Hutchins litigation, also alleged a cause of action under the Telephone Consumer Protection Act. The Mavericks requested from TIG a defense and indemnification against both suits under their insurance policies issued by TIG, including a commercial general liability insurance policy.[1] TIG denied coverage in both cases.

---

1. TIG also insured the Mavericks under umbrella and excess coverage polices. Other than the limits of liability in these policies, the relevant coverage terms are essentially the same.

The Mavericks filed suit against TIG alleging it had breached the various insurance contracts and violated article 21.21 of the Texas Insurance Code. The Mavericks also sought a declaratory judgment that TIG was obligated to defend and indemnify them against the claims asserted in the Rodriguez and Hutchins suits. Finally, the Mavericks sought monetary penalties for TIG's alleged violation of article 21.55 of the Texas Insurance Code.

The parties filed cross-motions for summary judgment on the issue of TIG's duty to defend. The Mavericks argued the claims made in the Rodriguez and Hutchins suits were covered by the policies' provisions obligating TIG to defend the Mavericks against claims for "property damage" or "advertising injury." TIG responded arguing, among other things, that the alleged property damage did not arise out of a covered "occurrence" as required by the policies. TIG also argued that the facts alleged by the Rodriguez and Hutchins plaintiffs did not fall within the policies' definition of "advertising injury." The trial court granted the Mavericks' motions for partial summary judgment stating the petitions in the underlying litigation set forth a cause of action potentially covered by the Mavericks' liability insurance and, accordingly, TIG had breached its defense obligations.

The issue of whether the Mavericks were entitled to recover penalties under article 21.55 of the insurance code was decided by the trial court in a trial on stipulated facts. The parties stipulated to the amount of reasonable and necessary attorney's fees incurred by the Mavericks in defending against the underlying litigation. The two issues presented to the trial court for decision were whether article 21.55 applied to the Mavericks' claims for a defense and, if so, whether the eighteen percent per annum penalty continued to accrue after the date of the judgment decreeing that TIG had breached its duty to defend. The trial court ruled that article 21.55 applied to the Mavericks' claims but held that the penalty ceased to accrue on the date the judgment against TIG was rendered.

Both sides have appealed. TIG asks this Court to reverse the trial court's judgment with respect to both the duty to defend and the application of article 21.55. The Mavericks ask us to affirm the trial court's decision on the duty to defend but reverse its holding on article 21.55 and render judgment that the eighteen percent per annum penalty continues to accrue until the underlying damages have been paid.

## II.

We first address the trial court's determination that the petitions in the Rodriguez and Hutchins suits alleged claims that fell within the coverage provided by the Mavericks' commercial general liability insurance. TIG's duty to defend the Mavericks against the claims made in the Rodriguez and Hutchins suits is determined solely by a comparison of the allegations in the petitions to the terms of the insurance policies. *See Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). It is the facts alleged rather than the legal theories asserted that determine coverage. *See Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.,* 829 S.W.2d 270, 272 (Tex.App.-Dallas 1992, writ denied). We examine the allegations without regard to their truth or falsity and give liberal interpretation to their meaning. *Maayeh v. Trinity Lloyds Ins. Co.,* 850 S.W.2d 193, 195 (Tex.App.-Dallas 1992, no writ). If the facts alleged in the petition are not covered under the terms of the policies, TIG does not have a duty to defend regardless of the legal theories ad-

vanced. *Id.* However, if there is any doubt with respect to whether the allegations in the petition against the insured state a cause of action within the coverage of the liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997).

▆▆▆ The terms of an insurance policy are interpreted by using the general rules of contract construction. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). If the wording can be given only one reasonable construction, it will be enforced as written. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co. Inc.,* 811 S.W.2d 552, 555 (Tex.1991). A term not defined by the policy is given its plain, ordinary, and generally accepted meaning unless the policy indicates the term was used in a technical or different sense. *Dimotsis v. State Farm Lloyds,* 5 S.W.3d 808, 811 (Tex.App.-San Antonio 1999, no pet.). If the language used in the policy is susceptible to more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured. *Hudson Energy,* 811 S.W.2d at 555.

The facts alleged in the Rodriguez and Hutchins suits are simple. According to the plaintiffs, the Mavericks contracted with a company called American Blast Fax, Inc. to send advertisements for Dallas Mavericks basketball tickets by telephone facsimile machine. The plaintiffs allege they did not give their permission to receive such advertisements and, therefore, the advertisements violated the Telephone Consumer Protection Act. *See* 47 U.S.C. § 227.

The commercial general liability policies issued by TIG to the Mavericks obligates TIG to "pay those sums that the insured becomes legally obligated to pay as damages because of ... 'advertising injury' to which this insurance applies." The policies go on to state that TIG has "the right and the duty to defend any 'suit' seeking those damages." The term "advertising injury" is defined to include the "oral or written publication of material that violates a person's right of privacy." Accordingly, for the allegations in the Rodriguez and Hutchins suits to fall within the policies' advertising injury coverage, the advertisements received by the plaintiffs on their telephone facsimile machines must have constituted published material that violated the plaintiffs' right of privacy.

TIG argues that the term "material" as used in the definition of advertising injury means the content or substance of the publication. TIG further contends there is no allegation in the Rodriguez or Hutchins suits that the content of the transmissions sent to the plaintiffs violated their right to privacy. Instead, TIG characterizes the petitions as alleging only an invasion of privacy arising out of the physical intrusion of the facsimile transmissions into an area where the plaintiffs had a reasonable expectation of privacy. In essence, TIG is arguing that because the plaintiffs did not specify how the content of the transmission violated their right to privacy, the content of the transmission was irrelevant to the their claims.

▆▆▆ We agree with TIG's contention that the term "material" as it is used in the insurance policies refers to the content of the publication at issue rather than the publication's physical form. To hold otherwise would render the words "oral or written" in the definition of advertising injury meaningless. *Cf. W. Indem. Ins. Co. v. Am. Physicians Ins. Exch.,* 950 S.W.2d 185, 188 (Tex.App.-Austin 1997, no writ) (all provisions should be given effect when interpreting an insurance policy). We do

not agree, however, with TIG's characterization of the plaintiffs' claims in the Rodriguez and Hutchins suits.

■ Both underlying suits alleged the plaintiffs received unsolicited advertisements on their facsimile machines in violation of the Telephone Consumer Protection Act. One of the stated purposes of the Act is to protect the privacy rights of telephone service customers by prohibiting the transmission of unwanted advertisements. *See* 47 U.S.C. § 227(b)(2)(B)-(C). Before passing the Act, the United States Congress specifically found that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy...." H.R.REP. No. 102–317 at 2 (1991). The only written material to which the prohibitions of the Act apply is advertising. By limiting the protections afforded by the Act to apply only to advertising and not to other written material, Congress recognized that advertising is a form of written communication that can have a uniquely intrusive quality when sent to persons who have not requested it. Congress further recognized that this intrusion was sufficiently offensive and unreasonable that it amounted to an invasion of privacy and required regulation. *See id.*

The content of the facsimile transmissions received by the Rodriguez and Hutchins plaintiffs was critical, therefore, to their claims. But for the fact that the transmission contained advertising, the plaintiffs would not have been able to make claims under the Act. It was not necessary for the plaintiffs to specify how the advertising invaded their privacy. The Act presumes all advertising, so long as it is unsolicited, is an offensive intrusion into the recipient's solitude. *See W. Rim Inv. Advisors v. Gulf Ins. Co.*, 269 F.Supp.2d 836, 847 (N.D.Tex.2003). Accordingly, we conclude the petitions in the Rodriguez and Hutchins suits sufficiently allege that the plaintiffs' right of privacy was violated by written "material" so as to fall within the insurance policies' coverage for advertising injury.

■ TIG also argues the Rodriguez and Hutchins petitions do not allege there was any "publication" of the material at issue as required by the policies' definition of advertising injury. TIG contends the meaning of the term "publication" is limited when it is used in the context of invasion of privacy claims to mean the publication of material to third parties that wrongfully discloses private facts. The policies do not define the term "publication," however, and the rules of contract construction preclude such a limited reading.

As stated above, a term not defined by the policy must be given its plain, ordinary, and generally accepted meaning. *Dimotsis*, 5 S.W.3d at 811. The word "publish" is generally understood to mean to disclose, circulate, or prepare and issue printed material for public distribution. *See State v. Doe*, 61 S.W.3d 99, 102 (Tex. App.-Dallas 2001), *aff'd* 112 S.W.3d 532 (Tex.Crim.App.2003). There is nothing in the policies to contradict or limit this meaning. Accordingly, we cannot read the term "publication" to mean only the communication of offending material to a third party. *See W. Rim*, 269 F.Supp.2d at 847.

Applying the ordinary meaning of the term "publication," we conclude the Rodriguez and Hutchins petitions alleged facts sufficient to fall within the policies' coverage. The plaintiffs alleged the Mavericks distributed written advertising to them without their approval in violation of the Act. The distribution of the advertising to the telephone facsimile machine owners was a "publication" of the offending material. *See Doe*, 61 S.W.3d at 102. The trial court correctly concluded the petitions in the underlying litigation set forth claims

that, if proved, were covered by the terms of the Mavericks comprehensive general liability insurance and TIG wrongfully refused to tender a defense against those claims. We resolve TIG's first issue against it.

In TIG's second issue and the Mavericks' cross-issue, the parties debate the purpose and scope of article 21.55 of the Texas Insurance Code. The Mavericks contend TIG violated article 21.55 when it refused their request for a defense. TIG responds that article 21.55 does not apply to claims for a defense but only applies to first-party claims for payment to an insured or beneficiary.

■ Article 21.55 sets forth deadlines by which an insurance company must respond to a claim. *See* Tex.Rev.Civ. Stat. Ann. art. 21.55 (Vernon Supp. Pamph. 2004) A "claim" is defined as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." *Id.* § 1(3). If an insurance company does not comply with the requirements of the article, it is liable to pay "in addition to the amount of the claim, 18 percent per annum of the amount of the claim as damages, together with reasonable attorneys fees." *Id.* § 6. A wrongful refusal to pay a claim may be considered a failure to meet the requirements of article 21.55. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 461 (5th Cir.1997).

■ TIG argues the Mavericks' request for a defense was not a first-party claim for money to be paid directly to the insured and, therefore, article 21.55 does not apply in this case. After a close examination of the language and purpose of article 21.55, we conclude TIG is correct. The entire structure of article 21.55 presumes a tangible, measurable loss suffered by the insured for which he seeks payment from the insurance company. Any attempt to apply the statute's structure to a claim for a defense is unworkable and, based on the language of the statute, clearly unintended by the legislature. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000) (we determine legislature's intent from statute's plain and common meaning).

First, we note that article 21.55 is entitled "Prompt Payment of Claims." *See* Tex.Rev.Civ. Stat. Ann. art. 21.55. A demand for a defense under a liability policy is not a claim for payment. It is a demand that the insurance company provide a legal defense to the insured as required by the policy. The insurance company is not required to send a payment to the insured, prompt or otherwise, in response to a claim for a defense.

Next, article 21.55's definition of the term "claim" requires that the claim be a "first party claim ... that must be paid by the insurer directly to the insured or beneficiary." *See id.* § 1(3). When an insurance company provides its insured with a defense, the company then controls the defense and pays the attorneys' fees associated with the case to the attorney engaged to represent the insured. *See Am. Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480, 484 (Tex.1992) (insurance company pays the legal fees when it provides the defense); *Weaver v. Hartford Accident & Indem. Co.,* 570 S.W.2d 367, 369 (Tex. 1978) (one purpose of giving insurer notice of suit is to allow it to control the litigation and interpose a defense). The insured does not receive any direct payment as required by article 21.55.

The Mavericks argue that, due to TIG's refusal to provide them with a defense, they have been forced to pay for their own legal representation and their claim for

reimbursement of the defense costs is a first-party claim to be paid directly to them. The Mavericks' logic is flawed. The Mavericks' claim for reimbursement is not a claim under the policies but a common law claim for breach of contract damages. *See Hartman v. St. Paul Fire Ins. Co.*, 55 F.Supp.2d 600, 604 (N.D.Tex.1998). Article 21.55 applies only to claims that trigger the insurer's duty *under the policy* to pay the insured. *See* TEX.REV.CIV. STAT. ANN. art. 21.55, § 8; *See also Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001) (required element of action under article 21.55 section 6 is "a claim under an insurance policy"). It is TIG's breach of the insuring policies, rather than the policies themselves, that obligates TIG to reimburse the Mavericks. Accordingly, neither the Mavericks' claim for a defense nor its claim for reimbursement of defense costs is a "claim" as defined by article 21.55.

Our conclusion that a claim for a defense is not a "claim" to which article 21.55 was intended to apply is further supported by the fact that both the statute's deadlines and its consequences for failing to meet those deadlines presume that the insured's claim is one for compensation for a covered loss rather than for a defense. Under section 3 of article 21.55, the time period within which the insurance company must accept or reject a claim begins to run from the date the company receives all information necessary to secure proof of the insured's loss. *See* TEX.REV.CIV. STAT. ANN. art. 21.55, § 3(a). At the time the insured makes his claim for a defense, however, he has not necessarily incurred any legal expenses or suffered any actual loss. He has merely been sued. To equate being made the subject of a lawsuit with suffering a compensable loss would contort the statute's plain and common meaning. *See Fleming Foods v. Rylander*, 6 S.W.3d 278, 282 (Tex.2000). Because the deadline to accept or reject a claim begins to run when the insurer receives proof of the insured's loss, the deadline has no meaning when applied to a claim for a defense.

The penalty imposed on insurers who fail to meet the statutory deadlines also has no meaning when applied to claims for a defense. Under section 6 of article 21.55, insurers that do not meet the requirements of article 21.55 are liable to pay the insured "in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages...." *See* TEX.REV.CIV. STAT. ANN. art. 21.55, § 6. A claim for a defense has no "amount" to which the section 6 penalty may be applied because the claim is not for payment of money but for services to be rendered. As discussed above, to the extent the insured pays for his own defense and seeks to be reimbursed for these payments, his claim for reimbursement is not a claim under the policy but rather a common law claim for damages. Even if such reimbursement claims could be used for purposes of calculating the penalty owed, in many cases an insured may be unable to afford to hire and pay his own defense counsel. In such cases, the monetary value of the defense claim would be mere speculation. The insureds who are incapable of paying their own attorney's fees when they are sued would be the only ones unable to impose the penalty when the company wrongfully refuses to defend them. Such a result is irrational.

Based on the foregoing, we conclude that article 21.55 is not applicable to an insured's claim for a defense. In reaching this conclusion, we recognize that our holding is contrary to the holdings of other Texas state and federal courts. *See Luxury Living, Inc. v. Mid–Continent Cas. Co.*, No. CIV.A. H–02–3166, 2003 WL 22116202 (S.D.Tex. Sept.10, 2003); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, No. CIV.A.

5:02–CV–101–C, 2003 WL 21662829 (N.D.Tex. July 15, 2003); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F.Supp.2d 601 (E.D.Tex.2003); *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F.Supp.2d 783 (E.D.Tex.2002); *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F.Supp.2d 746 (N.D.Tex.2001); *N. County Mut. Ins. Co. v. Davalos*, 84 S.W.3d 314 (Tex.App.-Corpus Christi 2002, pet. granted). Few of these cases, however, provide any analysis. And those that do discuss the issue only cursorily.

The only state appellate court opinion to apply article 21.55 to a failure to defend is *Northern County Mutual Insurance Co. v. Davalos.* In *Davalos,* the court assumes without discussion that article 21.55 applies to an insured's claim for a defense. *See Davalos,* 84 S.W.3d at 318–19. The court then goes on to affirm the trial court's award of damages based on this assumption. Absent any reasoning to support the application of 21.55, *Davalos* is not persuasive.[2]

To the extent the opinions of the federal courts offer any analysis of the issue, the reasoning relied upon is faulty. In each case, the court concludes that article 21.55 applies to a claim for a defense because such a claim is a "first-party claim" made pursuant to a third-party insurance policy. *See Luxury Living,* 2003 WL 22116202, at *20; *Primrose,* 2003 WL 21662829, at *3; *Westport,* 267 F.Supp.2d at 632 n. 19; *Mt. Hawley,* 215 F.Supp.2d at 794; *Rubalcava,* 148 F.Supp.2d at 750. The fact that a claim is a first-party claim is not, however, sufficient in and of itself to place it within the scope of claims to which article 21.55 applies. The claim must also be one for *payment* to be made *directly to the insured or beneficiary.* As discussed above, neither of these two factors is present in claims for a defense.

In *Rubalcava,* the federal district court concludes that because the insured was forced to pay his own defense costs after the insurer refused to tender a defense, the insured's claim "is *now* a first party claim and the statutory penalty under Art.21.55 [applies] to such sums." *Rubalcava,* 148 F.Supp.2d at 750. The court fails to recognize the difference between a claim under the policy for a defense and a claim for reimbursement as damages for breach of the policy. Furthermore, after stating that the insured's claim has somehow evolved into one to which article 21.55 applies, the court then fails to apply the requirements of the article. If the claim is *now* a claim to which article 21.55 applies, when did the time period for the insurer to respond to the claim begin to run? Is the deadline for the insurance company to respond reset each time the insured seeks reimbursement for accruing fees? Is the insured required to continually submit his legal bills to the insurance company to be entitled to article 21.55 penalties? All of these questions, and the many more that arise, demonstrate that article 21.55 was not designed to apply to claims for a defense.

In *Westport Insurance Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, another federal district court states that applying article 21.55 to claims for a defense forces the insurer to decide the claim promptly and thereby increases the likelihood that the company will accept the duty

---

**2.** We note that the Texas Supreme Court has granted a petition for review in *Davalos.* We also note the supreme court has suggested hypothetically in another case that article 21.55 may be applicable to claims for a de-

fense. *See State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996). This statement was dicta, however, and made without any accompanying analysis. *See id.*

to defend. *See Westport,* 267 F.Supp.2d at 632 n. 19. Unquestionably, the statute provides incentive for insurers to act in a timely manner. Yet, insurers already have at least two significant incentives to resolve claims for a defense quickly. First, there is the deadline to file an answer on behalf of the insured. If the insurer fails to provide the insured with legal representation before the insured's answer is due, the company risks a default judgment against the insured for which it may be held liable. Second, for as long as the insurance company refuses to provide a defense, it has no control over the defense and the costs associated with the litigation that the company may ultimately be forced to pay.

Based on the foregoing, it is apparent that the legislature did not intend the deadlines and penalties of article 21.55 to apply to claims for a defense. Claims for a defense are fundamentally different than first-party claims for payment based on a loss suffered by the insured. The language of 21.55 cannot be applied to claims for a defense in any meaningful way. Accordingly, TIG's actions in this case are not subject to the eighteen percent penalty imposed by article 21.55.

We reverse the portion of the trial court's judgment applying article 21.55 to the Mavericks' claim for damages from TIG and render judgment that the Mavericks take nothing by their claims under article 21.55. We affirm the trial court's judgment in all other respects.