VALLEY FORGE INSURANCE COMPANY *et al.*, Plaintiffs and Counterdefendants-Appellants, v. SWIDERSKI ELECTRONICS, INC., Defendant and Counterplaintiff and Third-Party Plaintiff-Appellee (Ernie Rizzo, d/b/a Illinois Special Investigations, Third-Party Defendant-Appellee).

Second District    No. 2—04—0910

Opinion filed August 17, 2005.

874

Robert D. Tepper, of Schenk, Annes, Brookman & Tepper, Ltd., of Chicago, and Andrew Butz, Joseph S. Crociata, and William H. White, Jr., all of Bonner, Kiernan, Trebach & Crociata, of Washington, D.C., for appellants.

Deborah S. Bussert, of Meltzer, Purtill & Stelle, L.L.C., of Schaumburg,

and Anthony C. Valiulis and Joanne Sarasin, both of Much, Shelist, Freed, Denenberg, Ament & Rubenstein, of Chicago, for appellee Swiderski Electronics, Inc.

Phillip A. Bock, Malik R. Diab, and Robert M. Hatch, all of Diab & Bock, of Chicago, and Brian J. Wanca and Steven A. Smith, both of Anderson & Wanca, of Rolling Meadows, for appellee Ernie Rizzo.

Perry M. Shorris, of Bollinger, Ruberry & Garvey, of Chicago, for *amicus curiae*.

JUSTICE BOWMAN delivered the opinion of the court:

In this case, we are called upon to decide the scope of the Telephone Consumer Protection Act (Act) (47 U.S.C. § 227 *et seq.* (2000)) in relation to insurance coverage under a commercial general liability policy (policy). Based on the receipt of unsolicited facsimile advertisements, Ernie Rizzo, d/b/a Illinois Special Investigations (Rizzo), brought a class action lawsuit under the Act against Swiderski Electronics, Inc. (Swiderski). Pursuant to a policy purchased from Valley Forge Insurance Company and Continental Casualty Corp. (Insurers), Swiderski tendered the defense of the underlying action to Insurers. Insurers, however, sought a declaratory judgment that the policy does not call for either defense or indemnity. The parties filed cross-motions for partial summary judgment regarding Insurers' duty to defend, and the court granted summary judgment in favor of Swiderski. Insurers appeal, arguing that there is no duty to defend Swiderski under the policy's (1) advertising injury provision or (2) property damage provision. We affirm.

## I. BACKGROUND

On June 19, 2003, Rizzo, who operates a private investigation business, filed a class action lawsuit on behalf of all recipients of Swiderski's unsolicited facsimile (fax) advertisements. In his three-count complaint, Rizzo alleged that Swiderski (1) violated the Act by sending unsolicited faxes to fax machines throughout Illinois without obtaining prior consent; (2) improperly and unlawfully converted recipients' fax machine toner and paper to its own use; and (3) violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2002)).[1] Among other relief, Rizzo sought monetary damages and attorney fees.

When Swiderski tendered the defense to Insurers, they disclaimed

---

[1]The claim under the Illinois Consumer Fraud and Deceptive Business Practices Act was dismissed without prejudice.

coverage and filed a complaint for a declaratory judgment. Specifically, Insurers claimed that they had no duty to defend or indemnify Swiderski under the "personal and advertising injury" provision or the "property damage" provision of the policy. Swiderski filed a counterclaim, arguing that Rizzo's complaint alleged claims for "property damage" and "personal and advertising injury," and that Insurers' refusal to defend Swiderski constituted a breach of their duty to defend. The relevant portions of the policy are set forth below.

## A. "Personal and Advertising Injury" Provision

Under the policy, Insurers have the duty to defend any suit against Swiderski seeking damages caused by "personal and advertising injury." The policy defines "Personal and advertising injury" as injury arising out of one or more of the following offenses:

"d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. *Oral or written publication, in any manner, of material that violates a person's right of privacy;*

f. The use of another's advertising idea in your 'advertisement'; or

g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.' " (Emphasis added.)

"Advertisement" is defined under the policy as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The policy does not define the words "publication" or "privacy." In addition, the policy excludes " 'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' "

## B. "Property Damage" Provision

Under the policy, Insurers also have the duty to defend any suit against Swiderski seeking damages caused by "property damage." The policy defines "Property damage" as:

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

The policy applies to "property damage" only if the property damage is caused by an "occurrence." "Occurrence" is defined under the

policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define the word "accident." Coverage for "property damage" does not apply to property damage "expected or intended from the standpoint of the insured."

The parties filed cross-motions for partial summary judgment on the issue of Insurers' duty to defend. After briefing and oral argument, the trial court granted Swiderski's motion for partial summary judgment on July 23, 2004. In making its ruling, the trial court found only that Insurers had a duty to defend under the advertising injury provision; it did not decide whether there was coverage under the property damage provision of the policy.

Thereafter, in an order dated September 9, 2004, the trial court entered a declaratory judgment that Insurers had a duty to defend Swiderski. Insurers were ordered to pay the defense costs already incurred in the underlying suit ($25,242.22), which is still pending, and to advance future defense costs pending resolution of any appeal. In addition, the trial court certified the duty-to-defend issue for immediate appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Insurers' timely notice of appeal followed.

## II. ANALYSIS

■ Our standard of review on appeal from the entry of summary judgment is *de novo. American Family Mutual Insurance Co. v. Enright*, 334 Ill. App. 3d 1026, 1029 (2002). The construction of an insurance policy and a determination of the rights and obligations under it are questions of law for the court and appropriate subjects for disposition by summary judgment. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004); *American Family Mutual Insurance Co.*, 334 Ill. App. 3d at 1029. Although summary judgment is a drastic means of disposing of litigation, it is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We will reverse the entry of summary judgment if we determine that the prevailing party was not entitled to judgment as a matter of law or that a material question of fact exists. *Chatham Corp. v. Dann Insurance*, 351 Ill. App. 3d 353, 357 (2004).

At issue here is whether Insurers are required to defend, under the policy's personal and advertising injury provision or property damage provision, a claim against Swiderski under the Act, based on unsolicited fax advertisements. As the trial court found that such a duty to defend exists under the personal and advertising injury provision, we analyze this portion of the policy first.

## A. Personal and Advertising Injury

As stated, the policy's "personal and advertising injury" coverage includes injury from "[o]ral or written *publication* of *material* that violates a person's *right of privacy*." (Emphasis added.) The underlying lawsuit alleges that Swiderski violated the Act by sending unauthorized facsimiles to various recipients. For purposes of denying coverage, Insurers contend that the allegations in Rizzo's complaint implicate neither "publication" nor "material that violates a person's right of privacy." We set forth the relevant provisions of the Act.

■ The Act, enacted in 1991, provides that "[i]t shall be unlawful for any person within the United States *** to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1), (c) (2000). The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227 (a)(4) (2000). A person or entity may bring an action for a fax-advertising violation under the Act. 47 U.S.C. § 227(b)(3) (2000).[2]

Insurers first assert that the portion of the Act that governs commercial fax advertising does not protect privacy interests. Rather than protecting privacy interests, Insurers assert, the purpose of the Act's fax-advertising prohibitions is to regulate an economic nuisance by protecting individuals and business entities from misuse of their fax machines and supplies. Because the Act's fax-advertising prohibitions protect business entities, which do not have privacy rights, as well as individuals, who do have privacy rights, Insurers argue that a claim under the Act cannot possibly be a violation of privacy. According to Insurers, the legislative history shows that the only privacy interests protected under the Act relate to residential telephone subscribers who are intruded upon in the home by receiving calls from telemarketers. See 47 U.S.C. § 227(c) (2000) (entitled "Protection of subscriber privacy rights"); 47 U.S.C. § 227(c)(5) (2000) (a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may bring an action). Because the word "privacy" is used in the section relating to telemarketers, but not in the fax-advertising-prohibition section, Insurers argue that the legislature did not have privacy in mind with respect to faxes.

---

[2]Through such an action, a recipient may obtain injunctive relief and actual monetary losses, or $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3) (2000). If the court finds a willful or knowing violation of the Act, it may award treble damages. 47 U.S.C. § 227(b)(3) (2000).

In addition, Insurers assert that the "sending" or "transmittal" of an unsolicited fax ad to a specific person does not constitute "publication." Specifically, Insurers aver that "publication" in the context of the policy means injurious communication to someone other than the complaining party (a third party). According to Insurers, the "personal and advertising injury" provision offers coverage for claims based on certain "well-known" common-law torts involving a publication element, including not only slander, libel, and disparagement, but also violation of privacy. Thus, even if the Act creates a new "privacy" tort, as argued by Swiderski and Rizzo, Insurers assert that a fax-advertising violation does not involve publication of material that violates a person's right of privacy. At most, according to Insurers, the Act protects "seclusion" rights and not "secrecy" rights. Insurers assert that, as a result, the policy's "publication" requirement means that the policy's "privacy" offense coverage does not include a violation of a person's seclusion. Furthermore, Insurers assert that the Act's prohibition on unsolicited faxes does not involve "material," because the prohibition applies to all advertising, and all advertising cannot be "material that violates a person's right of privacy."

Swiderski and Rizzo counter that Insurers have a duty to defend under the advertising injury provision. They assert that the plain and ordinary meaning of the word "privacy" is not the same as its meaning in the context of common-law torts such as "invasion of privacy" or "intrusion into seclusion." Specifically, Swiderski asserts that the meaning of the word "privacy" is "freedom to be left alone" or "freedom from unauthorized intrusion," while Rizzo defines "privacy" as "seclusion." Both Rizzo and Swiderski assert that the Act creates "a newly recognized right of privacy," one that does not depend on the requirements of privacy actions under the common law.

In addition, Swiderski and Rizzo assert that the sending of unauthorized faxes constitutes "publication" and that transmission to a third party is unnecessary. Swiderski points out that the policy does not define "publication" and argues that the word should be interpreted in the broader sense of any "transmission of material." Rizzo similarly asserts that a normal, ordinary person would understand the sending of "junk fax ads" to constitute publication.

To date, no Illinois court has addressed whether an advertising injury provision such as the one at issue creates the possibility of coverage. Rather, almost all litigation of this kind has proceeded in federal court. See *American States Insurance Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939, 943 (7th Cir. 2004). However, as the parties recognize here, the federal courts are divided as to whether similar insurance provisions provide coverage for fax-advertising

claims under the Act. Thus, we begin our analysis by considering the federal cases on this subject.

## B. Federal Cases

Insurers rely on two recent cases decided by the Seventh and Fourth Circuits, *American States Insurance Co.* and *Resource Bankshares Corp. v. St. Paul Mercury Insurance Co.*, 407 F.3d 631 (4th Cir. 2005), which held that the sending of unsolicited fax advertisements was not covered under the insurance policies' advertising injury provisions. In *American States Insurance Co.*, the insurance policy, like the one at issue here, defined "advertising injury" to include "[o]ral or written publication of material that violates a person's right of privacy." *American States Insurance Co.*, 392 F.3d at 940. Although the district court found a duty to defend, the Seventh Circuit reversed this decision, stating that "privacy" is a word with many connotations, with the two principal meanings being secrecy and seclusion. *American States Insurance Co.*, 392 F.3d at 941. According to the insurer, the advertising injury coverage dealt with secrecy rather than seclusion. *American States Insurance Co.*, 392 F.3d at 941. The court noted that the policy language read like coverage of the tort of "invasion of privacy," where an oral or written statement reveals an embarrassing fact, brings public attention to a private figure, or casts someone in a false light through publication of true but misleading facts. *American States Insurance Co.*, 392 F.3d at 941. Because the recipient did not allege that the insured published any information about it, the court criticized the district court for not recognizing the difference between secrecy and seclusion and for not addressing whether the policy was limited to publication of secret information. *American States Insurance Co.*, 392 F.3d at 942. According to the court, the question was not how the word "privacy" was used in the debates that led to the Act's fax-advertising prohibitions, but what the word meant in the insurance policy. *American States Insurance Co.*, 392 F.3d at 942.

In the court's view, the fact that the recipient was a company was one reason to doubt that the policy covered the claim. *American States Insurance Co.*, 392 F.3d at 942. The court also stated that, because the policy covered a "publication" that violates a right of privacy, the structure of the policy strongly implied that coverage was limited to secrecy interests. *American States Insurance Co.*, 392 F.3d at 942. "In a secrecy situation, publication matters; otherwise secrecy is maintained. In a seclusion situation, publication is irrelevant." *American States Insurance Co.*, 392 F.3d at 942. In other words, the court reasoned that section 227(b)(1)(c) of the Act condemns a particular

means of communicating an advertisement, rather than the contents of that advertisement, while the advertising injury provision dealt with informational content. *American States Insurance Co.*, 392 F.3d at 943. Thus, the court held that such advertising injury provisions do not cover the normal consequences of "junk advertising faxes." *American States Insurance Co.*, 392 F.3d at 943.

Likewise, the court in *Resource Bankshares Corp.* held that unsolicited fax transmissions do not constitute violations of seclusion within advertising injury provisions for privacy offenses. In *Resource Bankshares Corp.*, the advertising injury provision at issue included the offense of "[m]aking known to any person or organization written or spoken material that violates a person's right of privacy." *Resource Bankshares Corp.*, 407 F.3d at 634-35. Noting that the word "privacy" carries different meanings in different contexts, the court reasoned that this did not necessarily render the word ambiguous. *Resource Bankshares Corp.*, 407 F.3d at 639-40. The real issue was whether, "when read *in context*, a reasonable purchaser of insurance would believe that the sort of privacy interests protected by the policies overlap with the sort of privacy with which the [Act] is concerned." (Emphasis in original.) *Resource Bankshares Corp.*, 407 F.3d at 640. Relying on *American States Insurance Co.*, the court concluded that the policy did not cover the sorts of privacy invasions envisioned by the Act's unsolicited-fax prohibition. *Resource Bankshares Corp.*, 407 F.3d at 640. The court stated that "if the class-action complaint alleges any violation of privacy, it is 'seclusion' privacy. [The complaint] is concerned with the manner of the advertisement. In contrast, the advertising-injury offense part of the policies is exclusively concerned with those types of privacy [citation], which, like secrecy, are implicated by *content* of the advertisements." (Emphasis in original.) *Resource Bankshares Corp.*, 407 F.3d at 641.

However, as Swiderski and Rizzo point out, the majority of federal cases reach the opposite result of *American States Insurance Co.* and *Resource Bankshares Corp.* See *Park University Enterprises, Inc. v. American Casualty Co. of Reading, Pennsylvania*, 314 F. Supp. 2d 1094 (D. Kan. 2004) (insurer had a duty to defend under the policy's advertising injury provision); *Hooters of Augusta, Inc. v. American Global Insurance Co.*, 272 F. Supp. 2d 1365 (S.D. Ga. 2003) (insured's action of sending unsolicited facsimiles to businesses, in violation of the Act, constituted advertising injury within meaning of coverage provision of policy; *Western Rim Investment Advisors, Inc. v. Gulf Insurance Co.*, 269 F. Supp. 2d 836, 846-47 (N.D. Tex. 2003), *aff'd*, 96 F. App'x 960 (5th Cir. 2004) (underlying suit was potentially within advertising injury provision's invasion-of-privacy clause); *Prime TV,*

*LLC, v. Travelers Insurance Co.*, 223 F. Supp. 2d 744 (M.D. S.C. 2002) (insured's act of faxing allegedly unsolicited advertisements was advertising injury within meaning of policy); see also *TIG Insurance Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232, 238 (Tex. 2004) (the sending of unsolicited advertisements by fax fell within advertising injury coverage of commercial general liability policy).

For example, in *Park University Enterprises, Inc.*, the "personal and advertising injury" provision mirrored the one in the case at bar by providing for coverage of "[o]ral or written publication of material that violates a person's right of privacy." *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1106. The court began its analysis by determining that the word "publication" was ambiguous. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1107. Noting that the insurer did not define the term in the policy, the court reasoned that "publication" could mean either the transmittal of material to a third party, or simply the transmittal of material, even if not to a third party. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1107. Because a reasonable person in the position of the insured could understand publication to include the transmittal of material, without transmittal to a third party, the court concluded that "publication" could have been involved in the case. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1107-08; see also *Western Rim Investment Advisors, Inc.*, 269 F. Supp. 2d at 846-47 (nothing in the policy indicates that the word "publication" necessarily means communicating the offending material to a third party; thus, faxing an unwanted advertisement may constitute a written publication); *TIG Insurance Co.*, 129 S.W.3d at 238 (plain and ordinary meaning of the word "publication," which was not defined in the policy, cannot include only the communication of offending material to a third party).

Next, the *Park University* court rejected the insurer's argument that the Act does not prohibit certain content or "material," but simply prohibits unsolicited communication by fax. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1108. According to the court, the Act is concerned with content in that it regulates *advertising* content, and such advertising content, as well as the paper containing it, may constitute "material." See also *Western Rim Investment Advisors, Inc.*, 269 F. Supp. 2d at 847 (court rejected the insurers' argument that the policy did not apply because there was no allegation that the faxes' content was offensive or invasive; the unwanted advertisement, regardless of what it specifically advertises, is the material that is offensive and violative of the right to privacy); *TIG Insurance Co.*, 129 S.W.3d at 238 (by limiting the protections afforded by the Act only to advertising and not to other written "material," the legislature

recognized that advertising is a form of written communication that can have a uniquely intrusive quality when sent to persons who have not requested it; but for the fact that the transmission contained advertising, the plaintiffs would not have been able to make claims under the Act).

Last, the *Park University* court determined that the Act involves privacy interests, as it seeks to address the right of fax recipients to be left alone. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1108-09. There, the insurer argued that a "right of privacy" was not involved in fax advertising cases because unsolicited faxes involve, at most, the tort of intrusion on seclusion. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1109. In rejecting this argument, the court stated that "privacy is privacy," and because transmitting an unwanted fax constitutes an intrusion on seclusion, it violates one's right of privacy. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1109. Noting that the plain and ordinary meaning of "privacy" includes the right to be left alone, unburdened by unsolicited facsimiles, the court concluded that the insurer had a duty to defend under the advertising injury provision of the policy. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1110; see also *Hooters of Augusta, Inc.*, 272 F. Supp. 2d at 1373 (a layman understands his right to be left alone at work by advertisers sending unsolicited faxes; thus, a violation under the Act may constitute an invasion of privacy within the meaning of advertising injury).

While we recognize that federal courts are not in agreement as to whether fax-advertising claims under the Act are covered under such advertising injury provisions, we believe that insurance-policy construction in Illinois compels us to find a duty to defend in this case.

## C. Construction of the Insurance Policy

■ When construing the language of an insurance policy, our primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Central Illinois Light Co.*, 213 Ill. 2d at 153. To determine the meaning of the policy's words and the intent of the parties, the policy must be construed as a whole, with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the entire contract. *Outboard Marine Corp.*, 154 Ill. 2d at 108. The construction given to an insurance policy should be a natural and reasonable one. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). If the words in the policy are plain and unambiguous, they will be afforded their plain, ordinary meaning and will be applied as written. *Crum &*

*Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). On the other hand, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed strictly against the drafter of the policy and in favor of coverage. *Outboard Marine Corp.*, 154 Ill. 2d at 119. "This is so because there is little or no bargaining involved in the insurance contracting process [citation], the insurer has control in the drafting process, and the policy's overall purpose is to provide coverage to the insured." *Outboard Marine Corp.*, 154 Ill. 2d at 119.

■ In determining whether an insurer has a duty to defend its insured in an underlying lawsuit, the court must look to the allegations in the underlying complaint and compare those allegations to the relevant coverage provisions of the insurance policy. *American Family Mutual Insurance Co.*, 334 Ill. App. 3d at 1029. The threshold requirements for the complaint's allegations are low. *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 407 (2004). If the facts alleged in the underlying complaint fall within, or *potentially within*, the policy's coverage, the duty to defend arises. *Outboard Marine Corp.*, 154 Ill. 2d at 108. This is true even if the allegations are groundless, false, or fraudulent, or if only one of several theories advanced is potentially covered under the policy. *Lyons*, 349 Ill. App. 3d at 406-07.

In ascertaining whether there is a duty to defend, the underlying complaint and insurance policy are to be liberally construed in favor of the insured, with all doubts and ambiguities to be construed in favor of the insured. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991); *Lyons*, 349 Ill. App. 3d at 407. The factual allegations of the complaint, rather than the legal theories, determine whether a duty to defend exists. *Lyons*, 349 Ill. App. 3d at 407. "Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Outboard Marine Corp.*, 154 Ill. 2d at 108.

■ With these principles in mind, we turn now to a comparison of the allegations of the underlying complaint with the language of the advertising injury provision. Specifically, Rizzo's complaint alleged that Swiderski violated the Act by sending unsolicited faxes to fax machines throughout Illinois without obtaining prior consent. Under the policy, "personal and advertising injury" includes injury from "[o]ral or written publication of material that violates a person's right of privacy." Although the policy does not define the words "publication" or "privacy," Insurers urge us to employ common-law tort definitions of these terms. However, given the broad duty to defend in Illinois (see *Outboard Marine Corp.*, 154 Ill. 2d at 127), and the well-

established rule that undefined terms will be given their plain, ordinary, and popular meaning (see *Gillen*, 215 Ill. 2d at 393 (undefined terms will be construed with reference to the average, ordinary, normal, reasonable person)), we hold that the average person would reasonably understand that he would be covered under the advertising injury provision of the policy.

## D. Publication

Relying on *American States Insurance Co.*, Insurers argue that "publication" in the context of the policy requires injurious communication to a third party. Like Insurers in this case, the insurer in *American States Insurance Co.* argued that its advertising injury coverage dealt with secrecy rather than seclusion. *American States Insurance Co.*, 392 F.3d at 941. The court adopted this reasoning, stating that the "structure of the policy strongly *implies* that coverage is limited to secrecy interests. It covers a 'publication' that violates a right of privacy." (Emphasis added.) *American Insurance Co.*, 392 F.3d at 942. The court went on to say that "publication" matters in a secrecy situation but not in a seclusion situation; thus, contacting one customer may not be "publication" at all for purposes of advertising injury coverage. *American States Insurance Co.*, 392 F.3d at 942. However, as our supreme court has stated, the issue is not whether Illinois case law supports such a distinction, but what the average person, for whom a policy is written, would reasonably understand the word "publication" to mean. See *Gillen*, 215 Ill. 2d at 395.

Contrary to *American Insurance Co.*, we agree with the reasoning in *TIG Insurance Co.*, where the court rejected the insurer's argument that "publication" is limited to the publication of material that wrongfully discloses private facts to third parties. *TIG Insurance Co.*, 129 S.W.3d at 238. According to the court, the rules of contract construction precluded such a limited reading of the word "publication," and the word must be given its plain, ordinary, and generally accepted meaning. *TIG Insurance Co.*, 129 S.W.3d at 238; see also *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1107 (under the "reasonable person in the position of the insured" standard, publication could include the transmittal of material, regardless of whether such transmittal is to a third party); *Western Rim Investment Advisors, Inc.*, 269 F. Supp. 2d at 846-47 (there is nothing in the policy indicating that the word "publication" necessarily means communicating the offending material to a third party).

We note that "publication" is defined in Webster's dictionary as "communication (as of news or information) to the public." Webster's Third New International Dictionary 1836 (1986). Thus, contrary to

Insurers' assertion, there is no requirement that the scope of "publication" be limited to material sent to a third party. See *Park University Enterprises, Inc.*, 314 F. Supp. at 1106 (if the Insurer intended to limit the scope of "publication" to material sent to a third party, it should have stated so in the policy); see also *Chatham Corp.*, 351 Ill. App. 3d at 359 (there is a general and well-established rule that a court will not add terms that the parties have not included in the language of the policy). Moreover, the insurer has the capacity to draft intelligible contracts, and the inexpert layperson will not be charged with the responsibility of formulating independent, technical, legal opinions regarding what coverage he is buying. *Gillen*, 215 Ill. 2d at 395. Stated simply, the word "publication" would not convey to the average, ordinary, normal, reasonable person an intention to include only communications sent to a third party.

Furthermore, even if we were to conclude that the average policyholder could reasonably construe "publication" to mean communication to a third party, this results in an ambiguity, as pointed out in *Park University Enterprises, Inc.* In other words, construing "publication" to mean communication to a third party would compete with the equally reasonable construction that no third party is required. Where competing reasonable interpretations of a policy exist, we are not permitted to choose which interpretation we will follow. *Gillen*, 215 Ill. 2d at 396. Instead, we must construe the policy in favor of the insured and against the insurer that drafted the policy. *Gillen*, 215 Ill. 2d at 396.

## E. Right to Privacy

Likewise, we are not persuaded by Insurers' argument that the advertising injury provision does not provide coverage for violations of a person's seclusion. As stated, "personal and advertising injury" includes injury from "[o]ral or written publication of material that violates a person's right of privacy." Relying once again on *American States Insurance Co.*, Insurers assert that unsolicited faxes involve, at most, the tort of intrusion on seclusion, while the policy coverage is limited to secrecy interests.

After recognizing that the Act protects at least a slight interest in seclusion, the court in *American States Insurance Co.* stated that the central question in the case was "whether the policy covers the sort of seclusion interest affected by faxed ads." *American States Insurance Co.*, 392 F.3d at 942. Distinguishing secrecy from seclusion, the court concluded that, while the Act condemns a particular means of communicating an advertisement rather than the contents of that advertisement, advertising injury coverage deals with informational

content. *American States Insurance Co.*, 392 F.3d at 943. Thus, the policy did not cover the normal consequences of "junk advertising faxes." *American States Insurance Co.*, 392 F.3d at 943.

While this "contextual" approach to determining the meaning of privacy may find support in privacy actions under the common law, that is not the standard governing judicial construction of an insurance policy in Illinois. Although the court in *American States Insurance Co.* states that courts reaching the opposite conclusion have "failed to distinguish secrecy from seclusion, or to appreciate that the statute's drafters and the insurance [company] may use the word 'privacy' in different ways" (*American States Insurance Co.*, 392 F.3d at 943), we note that Insurers could have defined "privacy" in the policy to avoid such a result. As an undefined term, however, we are required to give "privacy" its plain, ordinary, and popular meaning. Given the broad duty to defend in Illinois, the reality that there is little or no bargaining involved in the insurance contracting process, and the rule that the construction given to an insurance policy should be a natural and reasonable one, we decline to follow *American States Insurance Co.* on this point.

Rather, we are persuaded by the reasoning in *Park University Enterprises, Inc.*, where the court stated that "privacy is privacy." *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1109. In other words, because transmitting an unwanted facsimile constitutes an intrusion on seclusion, it violates one's right of privacy. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1109. In particular, the court stated:

> "This case is about interpreting the terms of a contract, not drawing fine lines between different types of torts. Like 'publication,' the term 'right of privacy' is open to numerous interpretations. It may be defined by importing Illinois tort standards, as [the insurer] suggests, or it may be defined in layman's terms. If [the insurer] thought Illinois tort standards should apply, it should have indicated as much in the policy. Because [the insurer] did not, the interpretation of a reasonable person in the position of the insured prevails." *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1109.

Webster's dictionary defines "privacy" as "the quality or state of being apart from the company or observation of others: seclusion." Webster's Third New International Dictionary 1804 (1986). Because a reasonable person would understand "privacy" to mean the right to be left alone (see *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1110), the sending of unsolicited fax advertising falls potentially within the scope of coverage under the terms of the advertising injury provision.

## F. Policy Exclusion and Public Policy

■ Insurers also argue that any advertising injury coverage is barred by the policy exclusion for "knowing infliction" of advertising injury. Specifically, the policy excludes coverage for "personal and advertising injury" that is "caused by or at the direction of the insured with the *knowledge* that the act would violate the rights of another and would inflict 'personal and advertising injury.' " (Emphasis added.) According to Insurers, the act of sending fax advertisements without prior permission "knowingly" causes the receipt of unsolicited fax ads and therefore falls within the exclusion. We disagree.

A policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific. *Gillen*, 215 Ill. 2d at 393. Again, *Park University Enterprises, Inc.* guides our analysis on this issue. The policy exclusion in *Park University Enterprises, Inc.*, which was identical to the one here, excluded coverage for advertising injury "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' " *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1110. Although the insurer in *Park University Enterprises, Inc.* argued that the policy exclusion applied, the court rejected this argument, noting that liability is possible under the Act even if fax advertisements are erroneously sent to recipients with whom there is no existing business relationship. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1103. According to the court, the recipient in that case recognized the implicit negligence component of the Act when it alleged that the insured "knew or *should have known*" that the fax was unsolicited. (Emphasis added.) *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1103.

As in *Park University Enterprises, Inc.*, Rizzo's complaint in this case presented alternative theories of liability, alleging that Swiderski sent faxes "when it [knew] or should [have known] that it did not have the recipient's permission to receive advertising from [Swiderski] and had no procedures in place to retain recipient permission." "Should have known" is a term connoting negligence. *Park University Enterprises, Inc.*, 314 F. Supp. 2d at 1103. Because the policy exclusion bars coverage of claims for only the "knowing infliction" of advertising injury, and because Insurers have a duty to defend if any theory in the underlying complaint could potentially be covered (*Wilkin Insulation Co.*, 144 Ill. 2d at 73), the exclusion does not bar potential coverage in this case. In reaching this conclusion, we express no opinion regarding the merit of Rizzo's claims or whether Insurers will be obligated to indemnify Swiderski based on either of Rizzo's theories of liability.

■ For the same reason, we reject Insurers' public policy argument, which is that loss caused by fax advertising is not fortuitous. According to Insurers, claims under the Act for loss based on receipt of fax advertisements involve *intentional* violations of privacy rights and should be held uninsurable as a matter of public policy. However, as we have stated, claims under the Act do not rest on intent to cause harm and may be made on the basis of mere negligence. Thus, Insurers' argument necessarily fails.

Having determined that Rizzo's complaint alleged facts that potentially fall within coverage under the advertising injury provision, we need not consider whether Insurers have a duty to defend under the property damage provision of the policy. See *Wilkin Insulation Co.*, 144 Ill. 2d at 73 (if the underlying complaint alleges several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy).

## G. Defense Costs

■ Insurers' final argument on appeal is that the trial court erred by requiring Insurers to post an appeal bond for defense costs already incurred and to advance future defense costs pending resolution of any appeal. Relying on *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367 (1999), Insurers point out that an insurer has no obligation to advance defense costs if it has filed a declaratory action to disclaim coverage. As an extension of the ruling in *State Farm Fire & Casualty Co.*, Insurers assert that such relief from advancing defense costs should continue to apply pending appeal from a trial court decision that the insurer has a duty to defend, without the necessity of posting any bond. In addition, Insurers assert that, if they prevail on appeal regarding the duty to defend, they should be entitled to recoup any defense costs incurred pending appeal.

When a complaint against the insured alleges facts within or potentially within the scope of the policy coverage, the insurer taking the position that the complaint is not covered by the policy must (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. *State Farm Fire & Casualty Co.*, 186 Ill. 2d at 371. These are separate and distinct options. *State Farm Fire & Casualty Co.*, 186 Ill. 2d at 373. If an insurer fails to take either of these actions, it will be estopped from later raising policy defenses to coverage. *State Farm Fire & Casualty Co.*, 186 Ill. 2d at 371.

In this case, Insurers did not advance Swiderski any defense costs and instead sought a declaratory judgment that the policy did not provide coverage. After determining that Insurers had a duty to defend

Swiderski in the underlying suit, the trial court ordered Insurers to post a bond to cover the defense costs already incurred and to begin advancing future defense costs. Insurers now assert that defense costs are being advanced to Swiderski "under reservation of all rights." Because we affirm the trial court's decision that Insurers have a duty to defend under the advertising injury provision of the policy, we need not address whether Insurers would be entitled to recoup any defense costs incurred pending appeal.[3]

With respect to Insurers' argument that they should not be required to advance defense costs pending this appeal, we reject this argument. Under the policy, Insurers have the duty to defend any suit against Swiderski seeking damages caused by personal and advertising injury. As our supreme court recently stated in *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146 (2005), an insurer may not define its duty to defend based upon the outcome of a declaratory judgment action. *General Agents Insurance Co.*, 215 Ill. 2d at 165. The court based its reasoning on an Eighth Circuit decision, where the policies provided that the insurer had the duty to defend any suit seeking damages caused by bodily injury or property damage. *Liberty Mutual Insurance Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998). There, the insurer filed a declaratory judgment action to determine its duty to defend, and the parties disputed whether the claims were excluded from coverage by operation of an exclusion clause. *Liberty Mutual Insurance Co.*, 153 F.3d at 924. According to the court:

> " '[The insurer] remained obligated to defend [its insured] so long as there remained any question as to whether the underlying claims were covered by the policies. Upon determination that *** the claims against [the insured] were therefore excluded from coverage, the district court properly concluded that [the insurer's] duty to defend [its insured] in this action expired. *Because we conclude that [the insurer] had a duty to defend [its insured] until such determination was made*, we reject [the insurer's] argument that it is entitled to reimbursement of defense costs.' " (Emphasis added.) *General Agents Insurance Co.*, 215 Ill. 2d at 165, quoting *Liberty Mutual Insurance Co.*, 153 F.3d at 924.

Here, as in *Liberty Mutual Insurance Co.*, the parties disputed whether fax-advertising claims under the Act are covered under the

---

[3]Parenthetically, we note that the supreme court has issued a recent decision holding that an insurer may *not* recover defense costs pursuant to a reservation of rights, absent an express provision to that effect in the insurance contract between the parties. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 165 (2005).

policy. Although Insurers appealed the trial court's determination that they had a duty to defend, Insurers remained obligated to defend Swiderski so long as there remained *any question* as to whether the underlying claims were covered by the policy. See *General Agents Insurance Co.*, 215 Ill. 2d at 165 (as long as any questions remained concerning whether the underlying claims were covered by the policy, the insurer's obligation to defend continued). Accordingly, once the trial court determined that Insurers had a duty to defend Swiderski in the underlying suit, this duty to defend continued during the pendency of this appeal.

## III. CONCLUSION

For the reasons stated, the trial court correctly found that Insurers have a duty to defend under the advertising injury provision of the policy. Therefore, the McHenry County circuit court's judgment is affirmed.

Affirmed.

CALLUM and KAPALA, JJ., concur.